# IRA F. ELROD

## *v.*

## THE TOWN OF BERNADOTTE.

1. TAXATION—*for bounty purposes—by towns in Fulton county, under act of February* 9, 1865. That act authorizes any town in Fulton county to levy and collect a tax for war purposes, not to exceed three per cent in any one year, to pay to volunteers, substitutes and drafted men, who might

enlist or be drafted in the military service of the United States. It is *held*, the power to levy this tax was not exhausted by the levy of a tax of three per cent in any one year, but the act contemplated there might be a necessity for a further levy, which might be made to any extent, so it did not exceed three per cent in any one year, upon the taxable property in the several towns.

2. Under this act, it was competent for the several towns to incur debts for the purpose contemplated, and if the tax authorized to be levied for one year was not sufficient to pay them, successive levies might be made, until a sufficient sum should be raised for their payment, being limited only to the three per cent in any one year.

3. So, where one of those towns employed an agent to secure volunteers in the army, to be credited to the town, in order to avoid the then impending draft, agreeing to pay such agent for his services, and to reimburse him for all moneys advanced by him in accomplishing the purposes of the act, it was *held*, the town, as a municipal corporation, would be liable to the agent on such contract. The obligation thus incurred would not be that of the individual officers who acted in behalf of the town.

4. REMEDY—*against towns—upon their contracts.* Towns may be sued, in respect to their contracts, in any appropriate action at law, or in chancery, and there is no limit in the use of these remedies, as to the character of the claim. .

5. ASSUMPSIT—*against a town.* So, where a town employed an agent to procure volunteers in the army, and to be credited to the town, in order to avoid an impending draft, the town agreeing to pay the agent for his services, and to reimburse him for all moneys advanced by him in the accomplishment of the object, it was *held*, an action of assumpsit would lie against the town upon such contract.

6. REMEDY—*where the claim is payable out of a special fund.* And the fact that such claim was payable only out of a special fund, to be raised by a special tax, would not deprive the creditor of the right to have a judgment against the town.

7. Since it has been decided that an execution can not issue against a municipal corporation, the reason of the rule, that a judgment could not be recovered for a claim payable out of a special fund, has ceased, and the rule also. In this respect, the case of *The Illinois State Hospital for the Insane* v. *Higgins*, 15 Ill. 185, has been modified by that of *City of Chicago* v. *Halsey*, 25 Ill. 598.

APPEAL from the Circuit Court of Fulton county; the Hon. CHAUNCEY L. HIGBEE, Judge, presiding.

The opinion states the case.

Mr. S. P. SHOPE and Mr. S. C. JUDD, for the appellant.

Messrs. ROSS & ROSS & WINTER, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of assumpsit, brought by appellant, in the Fulton circuit court, against appellee, to recover for services rendered and money expended in obtaining volunteers to enter the army, to save the town from a draft. On the trial, appellant introduced in evidence an act of the general assembly, entitled, an act to authorize the several towns of the county of Fulton to levy a tax. Its provisions were, to raise a fund to relieve the several towns of the county from the pending draft. Appellant, on the trial below, introduced evidence tending to prove that in the latter part of the month of February, 1865, the supervisor, collector and assessor of the town of Bernadotte, in pursuance of a vote and request of a special town meeting of the legal voters thereof regularly held, levied a tax of three per cent upon all the taxable property of the town, for the purpose of paying bounties to volunteers and substitutes who might be induced to enlist, twenty men being the quota of the town fixed by the military authorities.

Another town meeting was held in the following March, at which a vote was had upon the question of employing appellant as an agent to procure volunteers to fill the quota of the town, and by that vote the supervisor, collector and assessor were authorized to employ him for that purpose. They thereupon requested him to take the necessary steps for the purpose, and to advance and pay out such sums of money as might become necessary, and to make all contracts to accomplish the purpose; and they agreed to pay him a reasonable compensation, and to refund to him all sums of money he should have to advance for the purpose; that appellant thereupon entered upon the employment, and hired ten men to volunteer into the military service, who were accepted and duly credited to the town, and

it was thereby relieved from the pending draft; that appellant paid to the ten men one thousand dollars to induce them to volunteer; that it was a reasonable sum for the purpose, and the lowest sum for which volunteers could be induced to enter the military service. Appellant paid out, in procuring the men, two hundred dollars in necessary expenses; that he afterwards reported his acts in the premises to the officers, and a meeting of the voters of the town, and the same was approved by them. Appellant demanded of the town officers payment of these sums of money, and also demanded of them an order on the town clerk, who had the custody of the money, but they refused to pay the same, or to give an order on the clerk for the money, and the money remains unpaid.

Appellee proved that four thousand dollars were raised by the three per cent tax levied on the property in the town, and that the town officers paid it out to ten other men, who were hired by them to volunteer into the military service, before the bounties and expenses were paid out by appellant to procure the ten men employed by him.

The court gave, at the request of the defendant below, these instructions:

"In this case, the court instructs the jury, in behalf of the defendant, that, under the law offered and read in evidence, the demand sued for is payable out of a special fund, and this action will not lie to recover the same.

"The court instructs the jury, on behalf of the defendant, that if the defendant had expended all money raised on the tax levied, before the services of the plaintiff were performed, then the plaintiff can not recover, the same being payable out of a special fund, and not out of the general fund of the town."

To the giving of which appellant excepted. The jury found the issues for the defendant, and judgment was rendered in its favor, from which this appeal is prosecuted.

The act under which the officers of the town proceeded in this case was approved on the 9th of February, 1865 (Private laws, vol. 1, p. 124), and the first section declares that it shall be lawful for any town in Fulton county to levy and collect a tax of not more than three per cent in any one year, upon the taxable property of the town, to pay to volunteers, substitutes and drafted men, who might thereafter enlist or be drafted into the service of the United States, which tax, when collected, was to be known as the " bounty tax," and the fund thereby created, the " bounty fund." The other sections of the act provide the manner of levying, collecting and paying out the tax for the purposes contemplated in the first section.

This act does not seem to limit the amount that might be raised for the proposed purposes, but simply restricts the sum that could be levied in any one year to three per cent on the taxable property in the town. If a larger sum was required to answer the purpose, then the amount of deficits could be collected the ensuing year. This is manifestly implied from restricting the levy of any one year to the per cent named. If not, why not have provided that the sum to be raised should not exceed three per cent on the taxable property? This law manifestly contemplates a contingency that the amount authorized for one year might not be sufficient to procure the required number of men, and if so, then the town would be compelled to incur a debt that could only be collected and paid by subsequent levy.

In fact, as the necessity was urgent for the volunteers, there could not be time to levy and collect the first tax in time to pay men to volunteer, to escape the pending draft. It was, then, necessary that the town should incur the debt to the volunteers, or borrow money to pay them, until the money could be realized from the taxes. This the law must have contemplated, as the draft was then pending, and would occur within a short period of time. If the town could incur a debt until the tax could be levied and collected in 1865, why not incur one, a portion of which could only be paid from money levied and collected by taxation in 1866? We perceive no reason for

any distinction. If the tax levied in 1865 was not sufficient to accomplish the purpose, the town officers had power to levy, the next year, a sufficient sum, unless it exceeded three per cent. The levy of three per cent did not exhaust the power.

It is, however, insisted that this did not and could not become a debt against the town ; that the act does not authorize the town to incur a debt of this character. We have seen that, to execute the law, it became necessary that a debt should be incurred, either to the volunteers for the amount of their bounties, or to others for money to pay them. If, then, a debt had to be incurred, who was authorized to contract it? The title of the act is, to authorize the several towns of the county to levy a war tax. The first section authorizes any of those towns to levy the tax, and not the officers, but afterwards designates the officers who shall make the levy. The legislation has reference to and confers power on the towns, and hence we conclude that it was the town, and not individuals, who were authorized to incur the debt until the taxes could be levied and collected.

If, as the evidence tends to prove, appellant was employed by the town officers entrusted with procuring volunteers, and authorized him to advance money to procure them, and he did so, then the town became indebted to him for the sum thus paid, and, unless otherwise paid, the town still owes him. We infer from the evidence that he furnished as many men for the fourth of the money as were procured by the town officers, and so far as we can see he had as just a claim to have money refunded, advanced by him for the purpose, as the town officers ; but it seems, when collected, the entire proceeds of the tax were appropriated by them to free themselves from liability they had incurred.

The question then arises, whether appellant has mistaken his remedy, and whether he should not, as urged, have proceeded by mandamus. It is urged that it is his only remedy, and the case of *The Hospital for the Insane* v. *Higgins*, 15 Ill. 185, is referred to in support of the proposition. It will be observed, that is a State institution, controlled, managed and supported

by the State. It is more strictly an agency employed by the State, than a municipal corporation. Nor do we find that any authority had been given to sue the individuals incorporated by the appellation of the institution. It would seem that suit was against them, and not the corporation, as the court say: "They are not liable for the acts of the corporation, in an action in that name." The court further held, that dues payable out of a special fund do not arise on contract, and do not authorize an action of debt or assumpsit, which would entitle a plaintiff to satisfaction out of the general property of the institution. The money had, in that case, been appropriated out of the State treasury to pay the salary for which the suit was brought. It was the salary of the medical superintendent, and did not depend upon contract. The law had provided he should have a salary, to be fixed by the trustees, but which could not be reduced during the term for which he was appointed, while in the case at bar, appellant was employed to perform the duty required, and to advance means to accomplish the desired object. He was not to be paid a salary, but was to perform labor and advance money which the town agreed to repay, and to do which the town had power to levy and collect a tax from the inhabitants of the town. Again, towns may be sued on their contracts in law or equity. (Gross Comp. secs. 1 and 2, p. 755.) A town, then, being liable to be sued, and no limitation being imposed as to the character of the claim, we must presume that the general assembly intended that suits might be brought in all cases, as the language is sufficiently broad and comprehensive to embrace them.

It does not follow, that because a judgment may be recovered against a municipal corporation, its general property would be liable, as in this State the property of such bodies is not liable to sale on execution. *City of Chicago* v. *Halsey,* 25 Ill. 598. It follows that the reason assigned, in the case of *The Hospital for the Insane* v. *Higgins, supra,* why a judgment should not be rendered when a compensation is to be made out of a special fund does not now apply, and the reason having ceased,

the rule should cease. The circuit judge, no doubt, acted under the latter named of these cases, while *The City of Chicago* v. *Halsey*, has modified that decision. We are clearly of the opinion that appellant was entitled to maintain his action, if he could prove that he had rendered services and advanced money, as claimed, unless the same has been paid or discharged in some manner, and recover a judgment. And having recovered it, he would then be driven to an application for a mandamus, to levy and collect a tax for the payment of the sum thus ascertained to be due.

The judgment of the court below is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed.*