## JOHN DEXTER
### v.
### THOMAS HEAGHNEY.

*Trespass—Cattle—Fences—Chap. 54, R. S.—Replevin.*

A person having the legal remedy in his hands to enforce a given right, has no authority to take the remedy into his own hands and compel compliance by destroying or threatening to destroy the property of another.

[Opinion filed May 25, 1893.]

APPEAL from the Circuit Court of Stark County; the Hon. N. E. WORTHINGTON, Judge, presiding.

Mr. M. SHALLENBERGER, for appellant.

Messrs. C. C. WILSON and FRANK THOMAS, for appellee.

Mr. JUSTICE LACEY. The appellant was the owner of land in Valley township, Stark county, Illinois, being N. W. ¼ Sec. 23, and the appellee owned eighty acres adjoining his on the south. The plaintiff, the present appellant, bought his land in March, 1891. Prior to the time appellant bought his land, appellee had occupied it as a pasture; was the tenant of appellant's grantor and put the fences up that were there and took them away about two months after appellant purchased the land, after having notice to do so by appellant; after that appellant's land laid open to the commons, and he did not do anything toward enclosing it till 1892. He then asked permission to join fences with appellee, which was refused by the latter. The appellee had made a ditch on his north line and wanted appellant to make an entire east and west fence in order to protect his ditch. The appellant then enclosed his land on the east, west and north, but did not quite join with appellee at his

north and south lines. The appellant left a small space of two or three feet, but so cattle could not get through. At the time of the survey the appellant asked appellee to designate the part of the east and west fence that the appellant should build, which he offered to do, but appellee refused. The line fence was poor, down in places, and admittedly insufficient to turn stock.

The appellant then turned in horses and cattle, which he had taken to pasture, on his own land, knowing the appellee had grain on his land only protected by this insufficient fence.

The cattle and horses, as might have been expected, went over the line into appellee's grain fields and did damages to him. He distrained the stock and notified appellant to pay damages and take them away. This appellant refused to do and replevied the stock, a number of head of horses and cattle. On this state of facts the case was tried by the court and a jury and resulted in a verdict for appellee. There can be no complaint of improper instructions, as none have been abstracted, but it is insisted that on the admitted facts the appellant should recover.

The defendant's (appellee's) right to take the appellant's animals damage feasant, is regulated by statute, which reads as follows: "If any such animal or animals shall break into an enclosure surrounded by a fence of the height and sufficiency described by this act, or shall be unlawfully on the premises of another, the owner or occupant of such enclosure or premises may take into possession such animal or animals and keep the same until damages, with reasonable charges for keeping and feeding, and all costs of suit be paid." Sec. 21 Chap. 54 R. S., on subject of fences.

The insistance of appellant is that the animals were not on appellee's premises unlawfully; that inasmuch as he refused to allow appellant to join fences with him, or to make any portion of the cross fence, the latter had a right to turn his cattle in on his own land without regard to the danger to appellee's crops by his cattle, which had nothing to prevent their doing damage except the wholly insufficient fence.

Dexter v. Heaghney.

Had the appellant any right to enforce the submission of appellee to his demands to join fences and to make one-half the partition fence by turning his live stock in on his corn or doing what was equivalent to it, putting them into his own pasture, where there was nothing to hinder them from going into appellee's grain fields? The statute gives the appellee the right to compel a proper settlement of a dispute like this one and to compel appellee to build his half of the partition fence. In this case he insisted appellant should build the entire fence. If appellant had pursued the remedy given him by Chap. 54 R. S., and especially sections 4, 5, 7, 8, 9, 10 and 11, he could have compelled the appellee to build his half of the fence, and in his failure appellant could have built the entire fence and recovered the costs of building appellee's half, as fixed and determined by the fence owners. Having this legal remedy in his hands, the policy of the law would not permit him to take the remedy into his own hands and compel compliance by destroying or threatening to destroy appellee's crops. Such a course could not be tolerated where the law gave him a peaceful and adequate remedy. If the appellant had not joined fences with appellee in such a manner as to make the line of fence in dispute a partition or division fence then both appellant's and appellee's lands were being open and the domestic annimals of appellant were running at large contrary to statute law, and the stock distrained would be unlawfully on appellee's premises and liable to distraint. The evidence shows damages to some extent to appellee's crops by appellant's stock and that the former fed the dis-trained stock for at least two days before it was replevied; yet nothing was tendered for such damages and expenses before the suit was brought. We see no error in the verdict of the jury or any portion of the record.

The judgment of the court below is therefore affirmed.

*Judgment affirmed.*