(No. 4557—

EDWARD J. DOERR, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 8, 1956.*

GIFFIN, WINNING, LINDNER AND NEWKIRK, Attorneys for Claimant.

LATHAM CASTLE, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

FEARER, J.

On July 18, 1951, claimant was the owner of the following described real estate in the Village of Prairie Du Rocher, Illinois:

The Southeast Half (SE½) of Lot Four (4) in Block Sixteen (16) in the Village of Prairie Du Rocher, State of Illinois.

The real estate was improved with a two-story frame dwelling, which was located on the north side of Oliver Street, one and one-half blocks west of State Aid Route No. 7 in said Village.

State Aid Route No. 7 has been continuously under the jurisdiction of the Division of Highways, Department of Public Works and Buildings of the State of Illinois, since 1938.

For many years prior to July 18, 1951, there was a natural drainage of surface water from bluffs located east of said highway into a natural drainage or ditch located on the south side of Oliver Street, which was across the street from claimant's property.

Claimant alleged that, on or about July 18, 1951, respondent did, without notice, construct a culvert under State Aid Route No. 7 at its junction with the north side of Oliver Street, changing the natural drainage from the south to the north side, adjacent to claimant's property. Furthermore, by the construction of the culvert in question, the water concentrated at this culvert, because of improper construction and failure to keep the ditches open on the east side of the highway, and by allowing culverts to the north and south of Oliver Street to become blocked, and thus unable to drain the water flow from the bluffs and properties to the east, which were of considerable higher altitude than claimant's property.

Claimant further alleged that on the date in question, as the result of the negligence of respondent, his property was flooded by water discharged from the culvert hereinabove referred to, and his property was undermined and caved in; that there were more than five feet of water in his basement; and, that he was put to a great expense in rebuilding and relandscaping his premises. As a further result, he was required to stay home and away from his employment, and lost income for a period of approximately two months, while he was doing certain rebuilding work on his damaged property.

In respondent's answer to the complaint, it is alleged that it had no knowledge of the allegations set forth in paragraphs 1, 2, 6 and 7, and demanded strict proof thereof. In paragraph 2 of the answer, it denied paragraphs 3, 4 and 5 of the complaint, being the paragraphs wherein respondent is charged with negligence in the construction of culverts and changing the flow of surface waters, so that said waters, after a heavy rain, would concentrate in the area of claimant's property, resulting in damage.

As an additional defense, respondent raised the two year statute of limitations contained in Section 22 of the Court of Claims Act. This additional defense was raised in a motion, supported by affidavit, filed by respondent on October 9, 1953. An order was entered by this Court overruling respondent's motion, giving as a reason therefor that it was this Court's opinion that the statute of limitations did not begin to run until the date of the damage for which this claim was made, and not from the time of the construction or change in the drainage along said state highway, which, according to the affidavit attached to the motion, occurred on July 20 and 21, 1949.

The complaint for the recovery of damages was filed in this Court on July 3, 1953.

Respondent, in its brief and argument, has cited the case of *Kershaw* vs. *State of Illinois,* 21 C.C.R. 389. In that case, claimant alleged in his complaint that, on June 19, 1950, and June 28, 1951, and for several years prior thereto, he was the owner of certain described real estate, and that there ran through the described lands in an easterly and westerly direction a certain stream of water known as Big Indian Creek, which flowed through a natural course until respondent constructed a highway bridge, fills and approaches for the bridge along Route No. 78. The bridge, by the nature of its construction, limits and constricts the free and uninterrupted flow of water of Big Indian Creek, and the opening left for the passage of water was insufficient to permit the normal unimpeded and uninterrupted flow of water from said creek in periods of high water.

Claimant further alleged that, on the occasions above referred to, his lands were flooded, and the impounded water moved off more slowly than normal drainage of surface water did prior to the construction of the bridge and approaches, leaving large bodies of water standing on the crops. In an attempt to avoid flood conditions, claimant constructed a levy or dike separating his land, but that despite this added barrier his lands were covered with several feet of water.

A motion, to which an affidavit was attached, was filed to dismiss the complaint for the reason that the claim was barred by the statutory limitations contained in Par. 439.22, Chap. 37, Ill. Rev. Stats., 1951, wherein it is alleged that the highway bridge, fills and approaches complained of were all completed more than twenty years

prior thereto, the construction of the bridge having been completed on August 21, 1929, the earth fills on December 23, 1929, and the pavement on September 9, 1930.

In the case of *W. Jeff Horney and Frances Parke Horney* vs. *State of Illinois*, 9 C.C.R. 354, this Court discussed at length the question of liability of the State of Illinois for taking or damaging private property for public use.

We quote from the opinion:

"The only liability of the state for taking or damaging private property for public use is under Section 13 of Article 2 of the Constitution of Illinois. In all cases upon the constitutional provision that private property shall not be taken or damaged for public use, there can be but one recovery, and such recovery includes all damages resulting from the improvement, past, present or future. A claim for the recovery of damages for private property not taken for public use, alleged to have been caused by reason of construction of a public improvement, accrues when the improvement in question is made; and, if claim therefor is not made within two years after the making of same, the claim is barred by the statutory limitations contained in, Par. 439.22, Chap. 37, Ill. Rev. Stats., 1951. It appears from the record that the construction described herein was completed more than twenty years prior to the filing of this cause of action. A right of action for damages to private property not taken for public use, but alleged to have been damaged by reason of the construction of a public improvement, is in the owner of the property at the time of the making of the improvement, and a subsequent alienee of the property takes the same as it existed at the time of the conveyance, and has no right of action for damages resulting from the prior improvement, and accruing after the conveyance."

For the reasons assigned above, this Court sustained the motion of respondent on the grounds that the statute of limitations had run.

The problem presented by the present case is predicated upon the negligent acts or omissions of respondent's agents in diverting the natural flow of surface water by changing the drainage or location of the drainage tubes, and their failure to remove debris from the ditches located on the east side of the state right-of-way.

This is not a case under Sec. 13 of Art. 2 of the Constitution of Illinois, wherein private property is being taken for a public improvement, for which the state is required to make payment therefor, but is a case where the state has negligently changed the drainage, or omitted to remove obstructions, so that water could flow in its natural course, which had always been across the street from claimant's property, and also on the east side of the highway, which was approximately one block and a half from claimant's property.

Seven witnesses testified on behalf of claimant, and stated that, on July 18, 1951, claimant owned the six room house located on the north side of Oliver Street, which intersected the state highway, and which was several feet lower than the highway. The terrain sloped from east to west, and east of the highway it was very rough and hilly. During heavy rains a large amount of water would run down to the highway, which formerly had been carried away by ditches extending along the east side thereof, and, in addition, by drainage to the south of Chambers Street. There was testimony corroborating claimant as to the drainage prior to July 18, 1951, and as to the ditch on the east side of the highway. Claimant's witnesses testified to the flow of water when the drainage was diverted down Oliver Street at the time the culvert was placed under the highway. They further stated that there was very little water from the bluffs east of the highway before the culvert was constructed at Oliver Street.

At the time of the heavy rainfall on the day in question, claimant was away from home. His basement was flooded with approximately five feet of water, which had to be pumped out. His yard was filled with mud and

debris. The walls and floors in the basement, due to the dampness, were damaged, and a considerable amount of damage was done to his home. It was necessary to make repairs to his home by reason of the water damage, and also to make certain repairs to his yard.

There was testimony that, prior to the time of the change of flow of surface waters by the construction of the culvert, the property in this area had never been flooded, and the water had properly drained along the east side of the state highway, a block north of Oliver Street, and that certain water had drained on Oliver Street on the south side of the street opposite claimant's property.

Claimant further testified as to the damages and money expended as the result of the flooding of his property.

Claimant's wife testified that she was home the night of July 18, 1951, and that it had rained the night before, but not unusually hard. The next morning she found the basement flooded, and water and debris in the yard. A wall and a two foot ledge in the basement were caved in, the foundation cracked, the downstairs windows cracked, and the doors in the house would not close. Her husband returned home about two days after the flood. The exhibits, which were offered in evidence by claimant, were taken about one month after the property was damaged.

All of claimant's witnesses testified as to the amount of water, which accumulated on claimant's property on the day of the flood, and certain witnesses testified as to the condition of claimant's property, the amount of water in the basement, and the damage done to the house as the result thereof.

Respondent offered in evidence the testimony of Mr. Miller, Assistant to the Field Maintenance Engineer, who testified as to certain photographs taken by him in the vicinity of Oliver Street, and as to the various elevations of Oliver Street, which were made on November 24, 1954. He stated that there was a nine foot drop from the center of the highway to claimant's residence, and that the culvert at Oliver Street was the standard type used where the terrain is average. Furthermore, he stated that the ditch to the north of the culvert was not as deep as the one to the south.

Jack Day, Field Engineer for respondent, testified that the culvert at Oliver Street was installed on July 20 and 21, 1949, but did not know when the culvert, which was located one-half block south of Oliver Street, was closed; that the records of the Division of Highways did not show whether any maintenance work was ever done on the culvert in the vicinity of Oliver Street; and that, if the ditch on the east side of the road was not hollowed out, water would flood the road. He did not know the depth of the ditches on the east side of the road, nor when the culvert was built. He further testified that the ditches south of Oliver Street needed cleaning out, but stated he had not observed a ditch to the north of Oliver Street on the east side of the highway.

The record establishes that State Aid Route No. 7, at the intersection of Oliver Street, is between nine and ten feet higher than the level of claimant's house. From this intersection the road goes up hill for about a block to a summit. Across State Aid Road No. 7 are bluffs, which are several hundred feet high. The record shows that no water came across State Aid Road No. 7, and that, therefore, the only water from across the road to-

wards the bluffs, which came into Oliver Street, must have come through the culvert in question. The culvert was a standard eighteen inch metal pipe, which had been in place for approximately three years. It is established in the record that the culvert was incapable of carrying the amount of water, which the witnesses saw flowing down Oliver Street. There was a ditch down each side of Oliver Street in front of claimant's house. The record does not establish who was charged with the maintenance of the ditches, but it is clear that they were not maintained by the State of Illinois.

The respondent's argument is that under Illinois Law a higher tract is dominant over a lower servient tract, which must accept the flow of surface water—the owner of the lower tract must permit the surface water from the higher tract to come upon his property. Citing: *Gough* vs. *Goble,* 2 Ill. (2d) 577.

Respondent further argues that no negligence whatsoever by the State of Illinois was shown in this case, but does not deny that claimant has suffered damages from the water, but, inasmuch as claimant is required to accept the surface water from property, which lies higher and above his property, he has failed to sustain the burden of proof, and, therefore, cannot recover in this action.

This is a case where the state has diverted the flow of surface water by placing a culvert under Oliver Street, which is borne out by the testimony; has allowed ditches on the east side of the highway to become clogged by debris, and the culvert to the north of Oliver Street to become completely clogged, so that a portion of the surface water coming from the bluffs south and east of the highway could be carried under the highway and the

street south of Oliver Street, and the rest of the surface water down the east side of the highway.

This, in our opinion, is a different situation than are the ones in the cases cited by respondent, and, under the circumstances, would entitle claimant to recover for actual damages sustained.

In the case of *Hargadine* vs. *Sharkey,* 8 Ill. App. (2d) 209, the Appellate Court had occasion to pass upon the sufficiency of Count I of the amended complaint, which was challenged by a motion to dismiss. The trial court sustained the motion as to certain counts of the amended complaint, the plaintiff elected to stand by the counts dismissed, and the Appellate Court overruled the trial court as to Count I of the amended complaint. We are only referring to the pertinent portions of the opinion as to the amended Count I, wherein it was alleged that plaintiffs owned certain described farm land; that State Aid Route No. 4, Stark County, Illinois, is approximately sixty feet wide, and passed by and through plaintiffs' land; that Spoon River runs in a southwesterly direction through a portion of plaintiffs' land, and intersects State Aid Route No. 4 at approximately right angles near the center of a described quarter-section of land; that west of Spoon River the land of the plaintiffs is bottom land, and State Aid Route No. 4 runs through this bottom land for a distance of approximately 100 rods to a bluff, and then slopes upward over the bluff; that prior to 1939 there were ditches on both sides of the state road running from the top of the bluff and along each side of the road to Spoon River, so that the water coming into the road at the top of the hill and on the side slopes of the hill drained to the river; that in the year 1939 certain improvement work was done at this location on State Aid Route No. 4 by

widening the road, and decreasing the slope over the hill; that, in making these improvements, almost the entire right-of-way for the road was used, and the ditches on both sides of the road from a point near the bottom of the hill extending to the river were filled or destroyed—thus eliminating the channels by which the water falling on the road and the hill could be carried to the river; and that, as a result thereof, the water now falling in the road and draining into the road comes down the ditches on each side of the road to a point near the bottom of the hill, and then, because of a lack of any further channel along either side of the road, flows out into the farm land of plaintiffs on both sides of the road.

The Count in question averred that the County of Stark had no legal right to so divert the hill water and to cast it upon plaintiffs' land, and alleged that plaintiffs had suffered and will continue to suffer irreparable damage from the acts done by the defendants resulting from the diverting and flowing of water on the land of the plaintiffs. The court stated on page 221:

"The County thus, by its improvement project, has diverted water which formerly followed established channels onto the plaintiffs' land. In the Young case, 134 Ill. 569, supra, the Town Commissioners of Highways were enjoined from digging a ditch, which would divert surface water onto the adjoining land of the complainant. The only difference between the Young case and this case is that here the improvement work has already been done. Certainly, if the Highway Commissioners can be enjoined before the ditch is dug, they cannot escape liability merely because the wrongful act is completed before suit is filed. Count I, as amended, of plaintiffs' amended complaint in our opinion states a good cause of action based upon the wrongful diversion of waters upon plaintiffs' lands."

There were several other counts presented, which were passed upon, but which it is not necessary for us to pursue, as the state would be liable for the negligent acts of its servants or agents for the diversion of the flow

of surface waters by reason of the doing of a wrongful act, or omitting to do something for the protection of property owners in seeing to it that surface water is not diverted, resulting in damage.

The only testimony offered as to the cost of repairs in placing the property in the same condition as it was prior to the flood was that of claimant. He testified that his bills, which were admitted in evidence, totalled $761.80. The bills represented actual expenditures made by claimant, necessitated by the damage caused by the flood.

Claimant testified that it would cost $1,000.00 to make further repairs to the house, that he had worked on the house for one or two months, and that he lost thereby wages from his employment. At the time he was earning $500.00 a month. We are unable to tell from this testimony what portions of the house had to be repaired, in addition to the repairs made or represented by the bills. Claimant could have detailed the parts of the house damaged by the flood, and had a carpenter or contractor testify as to the cost of labor and materials needed to repair the damaged parts of the house, and restore it to the same condition as it was before the flood.

Where receipted bills are not introduced in evidence as being paid or correct, the manner of proof would be the fair and reasonable value for materials, services and labor performed in the restoration of the property to the condition it was in just prior to the damages caused by the flood in Prairie Du Rocher and vicinity.

As to his loss of wages, we have no way of arriving at how many hours of work it was necessary for him to expend to repair the house, how many days he actually worked on the house himself, or any other competent

testimony as to the length of time that he would have had to spend away from his work in performing some of the labor himself. He was undecided whether he was away one or two months, as we have previously pointed out, in his testimony as to damages.

We dislike to have to speculate in entering an award where damages are proven in this manner, but, in making an award for an amount in excess of the paid bills, we are forced to speculate, and to make an award for an arbitrary figure without positive testimony to substantiate it.

It seems reasonable to assume from claimant's testimony that he would have an expenditure for the cost of repairing the property to the condition it was in before the flood, which could very easily be $1,000.00, in addition to the bills of $761.80.

This Court, therefore, awards to claimant damages in the sum of $1,761.80.