# THE CITY OF BLOOMINGTON

*v.*

## BROKAW & GREGORY.

1. MUNICIPAL CORPORATION—*liability for damages caused by changing grade of street.* If a city, in exercising its power of changing the grade of its streets, fails to exercise prudence and skill, it will be liable for all damages that result from such action.

2. If a city, in fixing the grade of a street, or in afterwards changing it, flows water upon a lot, that it did not naturally carry off, the city will be held liable therefor.

3. SAME—*estoppel to deny liability to pay damages.* Where a city was about to raise the grade of a street, so that surface-water would be thrown upon the plaintiff's premises, and the plaintiff filed a bill for an injunction, which was allowed, and it was then agreed that no injunction should issue, but the city should proceed to have the benefits and damages assessed, which was done, and the proceedings approved by the city council, which showed that the plaintiff was entitled to $175 damages, over ·and above benefits, and the city afterwards made the proposed change: *Held,* in an action against the city, that it was liable to pay the plaintiff the damages so assessed, the same as if it had been agreed upon, and that it was estopped from disputing the legality of the proceedings.

4. EXECUTION—*against city.* It is error, in rendering judgment against a municipal corporation, to award an execution against such corporation.

APPEAL from the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

This was an action of assumpsit, by Brokaw & Gregory, surviving partners of the firm of Brokaw, Ellsworth & Co., against the city of Bloomington, to recover the amount of an assessment of damages. The opinion states the material facts.

Mr. IRA J. BLOOMFIELD, for the appellant.

Messrs. ROWELL & HAMILTON, for the appellees.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

It is conceded, and properly so, that the city had the power to change the grade of its streets. Its charter confers

on the city authorities ample power to improve the streets, and, in making such improvements, they must exercise prudence and skill. In failing to do so, they become liable for all damages that result from such action. *Nevins* v. *The City of Peoria,* 41 Ill. 502, and other cases in this court, announce the rule.

In this case, the city changed the grade of the street, and appellees applied for an injunction, and the judge decided that a preliminary injunction should be granted; but the parties agreed that the injunction need not be sued out, but the city might have appellees' damages assessed, and proceed with the work. The mayor thereupon appointed six persons to examine the property, and ascertain the damages, if any, and report the same. They examined the ground, and. after hearing argument of counsel, found appellees derived a certain amount of benefit by the improvement of the street, but sustained damages, over the benefits, to the amount of $175, and so reported to the common council. They thereupon approved and confirmed the report, and proceeded to the completion of the work; and now refuse to pay the damages.

The bill for an injunction, among other things, charges that, by raising the grade of the street, it would flow the water on the premises of appellees; and if that was true. and, by using other means to accomplish the work, that could have been avoided, then the city would have been liable for thus flowing water on their premises. If the city, in fixing the grade of the street, or in afterwards changing it, flows water on a lot, that did not naturally carry off, the city must be held liable therefor. *City of Aurora* v. *Gillett,* 56 Ill. 132; *City of Aurora* v. *Reed,* 57 Ill. 20. If, as the bill alleges, the city was so constructing the street as to flow the water from the street upon them, and they could, as we presume they might, have avoided such injury, by proper sewers or drains, then there was such damage to private property as would render the city liable for the injury. This, then, formed at least a claim for damages apparently just, and if so, it was the

proper subject for adjustment and compromise; and, in pursuance.to an understanding between the parties, means were adopted, entirely satisfactory to all concerned, for an adjustment, which was had, and the city went.on and constructed the work.

Can it be possible that a municipal corporation may be clothed with power to injure and destroy the property of private individuals, without limit, and yet there be no power to make compensation? Are they so powerless to do simple justice? We think not. Does the constitution of 1870 prohibit cities and towns from doing any act to repair injuries inflicted, or purchase the right of way for streets, or adjust damages done for public use, without resorting to proceedings under the law regulating the exercise of eminent domain? We presume no one would contend that if a city or incorporation desired to extend or widen a street, they would not have the right, by contract, to acquire the title, and fix and agree upon the compensation to be paid; and where their improving streets produced the damage contemplated by the constitution, the compensation could be agreed upon and paid. The machinery by which the right of eminent domain is exercised is only to force unwilling persons, or persons inclined to extort upon the public, to yield their property to public use on receiving compensation therefor.

In this case, all that was done was by the city officials. They appointed the men to fix the compensation to be paid appellees, and, when fixed, the city council approved and confirmed it.

This case is clearly within the rule announced in *Higgins* v. *City of Chicago*, 18 Ill. 276. There, it was held the city could not be heard to object to the assessment of damages for the opening of a street, where the assessment had been approved and confirmed, because of irregularities in the assessment; and the city was compelled, by *mandamus*, to proceed to levy the money and pay the damages. So, in this case, the city can not be heard to say that the damages were not ascertained

under the Eminent Domain law. What was done was, in effect, the same as if the common council had agreed with appellee that they would pay him $175 for the damages they were liable to pay by reason of improving the street, and he had accepted the offer and abandoned his application for an injunction, and the agreement had been entered in the proceedings of the city council. We can see no reason why the city should not pay appellees this money.

It is also urged that the court below erred in awarding execution for the collection of the judgment. It has been repeatedly held that awarding an execution against an executor or administrator was an error, for which the judgment must be reversed; and it has also been held that it is error to award execution against a municipal corporation. In the case of *The City of Chicago* v. *Hasley*, 25 Ill. 598, it was held that an execution could not be rightfully issued against a municipal corporation; and it was held to be error in the court issuing it not to quash such a writ on motion. In the subsequent cases of *The City of Olney* v. *Harvey*, 50 Ill. 453, and *Elrod* v. *The Town of Bernadotte*, 53 Ill. 368, the rule announced in *The City of Chicago* v. *Hasley, supra*, was fully recognized. If an execution can not be rightfully issued against such bodies, then it was error to adjudge that an execution issue on the judgment; and the judgment of the court below, for this error, must be reversed and the cause remanded.

*Judgment reversed.*