(No. 5439— ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

W. R. MOUNT, ET AL., Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 11, 1977.*

HARRIS, HOLBROOK & LAMBERT, Attorneys for Claimants.

WILLIAM G. CLARK, Attorney General; LEE MARTIN, Assistant Attorney General, for Respondent.

SPIVACK, J.

The claim which the Court is required to consider pleads two distinct factual situations, each of which allegedly gives rise to compensable damages in favor of Claimants and against the State. The first involves the State's alleged failure to maintain a water gate which was on a river which crosses through the contiguous properties of the State and of the Claimants, which alleged negligence was the proximate cause of a flooding of Claimants' land and destruction of crops; the second involves the State's refusal to erect and/or maintain a division fence between its property (the Vienna Branch of the Illinois State Penitentiary) and that of Claimants, causing some of Claimants' cattle to stray onto the State's property where they were lost.

The cause was assigned to Commissioner Robert F. Godfrey, who conducted a hearing receiving the testimony of various witnesses, the numerous documents and exhibits which were admitted into evidence, and the arguments and briefs of counsel. The Commissioner has filed his report, the transcripts, the exhibits, and briefs with the Court, all of which are now before us. The following facts were established by Commissioner Godfrey:

Warden Hollis McKnight, for and on behalf of the Respondent, made an oral agreement with W. R. Mount about the division fence where the prison line adjoins the lands of Robert Mount. It was agreed between McKnight and Mount that the Respondent was to build and maintain one-half and the Mounts the other half. This in fact occurred and the fence was built by the parties. Warden McKnight left the Vienna Branch on September 15, 1965. His successor, Warden Macieiski, refused in the years of 1965 and 1966 to maintain half of the division fence between the Respondent's land and the land of the Claimants, although often requested by the Claimants to do so and so notified by letters admitted into evidence.

Claimant W. R. Mount claims a loss of 22 head of missing cattle attributable to the State's failure to repair its portion of the fence. Mount had written a letter to Warden Macieiski dated March 14, 1967, advising him that on April 1, 1967, Mount would begin pasturing his cattle on the land bordering the prison property and requested that the Respondent repair the fence. The Warden did not cause the repairs to the fence, and Claimant did thereafter pasture his cattle on the subject land.

Warden Maiceiski wrote a letter to Mount dated April 25, 1967, wherein he told him that he had nine

head of cattle. Mount went to the Warden but was told to return Monday, three days later. Mount waited at least 20 days before returning and, at that time, the Warden said someone had cut the fence and turned the cattle out. Mount and the Warden had a verbal confrontation, but nothing concerning the cattle came of it.

Part of Claimants' agreement with Warden McKnight concerned the maintenance of a water gate which was on the Respondent's side of Maxe Creek and which Respondent had constructed. Pursuant to this agreement, the Respondent had the duty to clear debris therefrom so as to prevent spillage and possible flooding. This agreement was honored under the administration of Warden McKnight, but not under that of Warden Macieiski, when logs and debris were allowed to accumulate. As a result, in 1967 heavy rain downfall flowing through Maxe Creek overflowed onto Claimants' land causing a flood condition and destroying 52 acres of corn, 70 acres of pasture, and 37 acres of hay crop.

We will first consider the matter of the lost cattle. Claimants contend that with respect to the fence, Respondent breached its statutory duty to maintain a lawful fence, Ill.Rev.Stat., Ch. 54, §2, and further breached its contract between Claimants and Warden McKnight. Further, with respect to the nine head of cattle which were on Respondent's property, Claimants contend that there was a bailment relationship between the parties which required Respondent to exercise ordinary care for the protection of the cattle which care Respondent failed to provide.

In our view, Claimants' argument in connection with the State's failure to maintain the fence must fail both on statutory and on common law grounds. Ill.Rev.Stat., Ch. 54, §2, et. seq., provides for the rights of a landowner if his neighbor fails to maintain a fence.

Specifically, the injured party may construct the fence which his neighbor has failed to erect and then proceed at law for the cost and expense of so doing. Even absent the statute, the common law would require that the injured party mitigate his damage caused either by a statutory or a contractual breach by doing the work himself, rather than aggravate the damage by turning out his cattle into a pasture which was unfenced. See *Dexter vs. Heochney,* 47 Ill.App. 205; *Fox vs. Fearneybrough,* 85 Ill.App.2d 371.

We likewise reject Claimants' bailment argument in support of their attempt to recover for the nine head of cattle which may have wandered onto Respondent's land.

Firstly, to create a bailment there must be either an express or implicit agreement to create the relationship. There was no such agreement made here nor can the law imply such an understanding. Claimants are in effect contending that a trespasser is entitled to the status of an invitee. This is not the law. A trespasser is entitled only to be protected from intentional harm and not from ordinary negligence. Here the cattle (if they were, in fact, the cattle of Claimants, a fact not proven) were entitled to protection against intentional and not negligent injury. In any event, Claimants certainly did not act reasonably either to identify or to protect their own property. After being properly advised, Claimants allowed over 20 days to elapse before attempting to reclaim their property. In the interim period, the cattle were lost and not through any deliberate act of the Respondent.

We will next consider Claimants' claim for damage to their crops and land occasioned by Respondent's failure to maintain the water gate.

Respondent takes the position that the Claimants should have kept the water gate in repair themselves, and that Respondent's only duty was not to actively invade the property rights of the Claimants, citing *Laney v. Jasper,* 39 Ill. 46; *Mello v. Lepisto,* 77 Ill.App.2d 399. Further, argues Respondent, it is the Claimants' duty to go upon the servient land to keep the water gate in repair, citing *Wessels v. Colebank,* 174 Ill. 618; *Savoie v. Town of Bourbonnais,* 339 Ill.App. 551.

We find Respondent's arguments in this regard to be without merit and the cases cited readily distinguishable for two reasons. First, here there was an agreement by the Respondent to keep the water gate clear, which agreement it violated. Second, here the water condition was not natural but resulted from a condition on the land created by Respondent which changed the natural flow.

In our opinion, Respondent should have foreseen the damage to Claimants caused by the change in the flow of the creek, and its failure to act to prevent the overflow, by keeping the water gate free from debris, was negligence proximately causing the damage to land and crops. *Kroencke v. State,* 22 Ill.Ct.Cl. 193; *Doerr v. State,* 22 Ill.Ct.Cl. 314.

The Claimants introduced evidence as to the monetary extent of damage to the crops and lands. This was not challenged by the Respondent. Therefore, the Claimants are entitled to the amount proved for the losses of the corn crop, hay crop, and loss of pasture for the years of 1965 and 1966.

Claimants are accordingly awarded the sum of Twelve Thousand Two Hundred Fifty Dollars ($12,250.00).