(No. 90541.—)

WILLIAM VAN METER *et al.*, Appellants, v. THE DARIEN PARK DISTRICT *et al.*, Appellees.

*Opinion filed October 17, 2003.*

360

362

THOMAS, J., took no part.
FITZGERALD, J., joined by GARMAN, J., dissenting.
GARMAN, J., joined by FITZGERALD, J., also dissenting.

Spina, McGuire & Okal, P.C., of Elmwood Park (Timothy H. Okal, of counsel), for appellants.

Howard K. Priess II, Telly J. Liapis and D.J. Sartorio, of Tressler, Soderstrom, Maloney & Priess, of Chicago, for appellee Darien Park District.

Russell W. Hartigan and Paul C. Jakubiak, of Hartigan & Cuisinier, P.C., of Chicago, for appellee City of Darien.

Norton, Mancini, Argenati, Weiler & DeAno, of Wheaton (James L. DeAno, of counsel), for appellee Village of Downers Grove.

Joseph E. Birkett, State's Attorney, of Wheaton (Margaret M. Healy and Anthony E. Hayman, Assistant State's Attorneys, of counsel), for appellee County of Du Page.

JUSTICE KILBRIDE delivered the opinion of the court:

The plaintiffs, William and Patricia Van Meter, filed a complaint against the Darien Park District, the City of Darien, the Village of Downers Grove, the County of

Du Page, and five private defendants, alleging that surface water flooded their home upon completion of an adjacent municipal recreation area called Westwood Park (the park). The municipal defendants filed motions to dismiss, pursuant to section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 1994)), alleging that they were entitled to discretionary immunity under section 2—201 of the Local Governmental and Governmental Employees Tort Immunity Act (the Act) (745 ILCS 10/2—201 (West 1994)). The Du Page County circuit court granted the municipal defendants' motions to dismiss, and the appellate court affirmed. No. 2—99—0009 (unpublished order under Supreme Court Rule 23). We granted the plaintiffs' petition for leave to appeal (177 Ill. 2d R. 315) and now reverse.

## I. BACKGROUND

The plaintiffs' 20-count complaint alleged negligence, *res ipsa loquitur*, and trespass and unlawful taking claims against the municipal defendants. In their complaint, the plaintiffs alleged that they own a single-family residence in Darien. According to the plaintiffs, the defendants started designing and planning the park on property between Darien and Downers Grove in March 1992. Together with engineers and architects, the defendants produced a "Landscape Development Plan," depicting drainage of surface and subsurface water, as well as changes in the elevation of the property affecting the natural flow of water. The Darien Park District approved the plan in conjunction with requirements imposed by the City of Darien, the Village of Downers Grove and Du Page County. Pursuant to the plan, the defendants, through their contractors, constructed a storm water drainage and detention system to restrict water from the environs of the park development and to prevent water from flowing in its natural course.

The plaintiffs alleged that the defendants owed "a

duty to the Plaintiffs to provide adequate drainage for the passage of water from and/or around Plaintiffs' property and not to alter the natural flow of water so as to cause water to back-up and flood Plaintiffs' real estate and residence." The plaintiffs further alleged that the defendants knew or should have known, when they approved the park plans, that the alterations in the natural flow of water would cause flooding problems for neighboring residents. According to the plaintiffs, the defendants breached this duty by failing to design, plan, supervise, observe, or manage properly the construction of Westwood Park. The plaintiffs specified several defects in the park construction, including an insufficient storm water drainage system that (1) alters the groundwater elevation; (2) restricts the natural flow of water; and (3) diverts water from adjoining property onto the plaintiffs' property.

The plaintiffs charged that the defendants negligently caused flooding on the plaintiffs' property and that the defendants negligently failed to correct the defects in the park design and construction "after being placed on notice that the use of those public improvements have [sic] created conditions that are not reasonably safe." The plaintiffs asserted that, before 1996, the year the project was completed, they suffered no flooding. In their trespass/unlawful taking counts, the plaintiffs alleged that the park construction has caused and still causes flooding on their property. This "continuing trespass," a purported "constant diversion" of water, has robbed them of the "peaceable enjoyment, occupation, possession, and use of their residence" and lowered the value of their property.

The defendants each filed motions to dismiss, pursuant to section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 1994)), asserting that plaintiffs' claims were barred by defendants' affirmative

defense of immunity under section 2—201 of the Act (745 ILCS 10/2—201 (West 1994)). On September 17, 1998, the trial court dismissed the plaintiffs' claims against the Darien Park District, Darien, and Downers Grove under section 2—201 of the Act, providing governmental entities with immunity from liability for acts or omissions arising from a determination of policy and an exercise of discretion. 745 ILCS 10/2—201 (West 1994); *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 341 (1998). On December 3, 1998, the trial court denied the plaintiffs' motion to reconsider, stating:

"[W]hat could be more discretionary than trying to decide how the landscape is going to be reconfigured to accommodate this park that they wanted to put here? I mean, that's almost discretionary by definition, isn't it?

You have to decide how you're going to change the landscape. You have to decide how you're going to reconfigure the surface flow of water because the park doesn't do any good if it's under water.

And so everybody sits around the table and decides how are we going to do this and what's our best judgment as to how we should design this so it does a minimum amount of damage to the surrounding properties and redirects the surface flow of the waters, so that we can build this park here.

What's more discretionary than that? If I apply the *ad hoc* test to these facts, how do I not conclude that the design of this park was a discretionary function?

\* \* \*

I think that even taking the facts as alleged in the plaintiff's [*sic*] complaint as true and indulging all reasonable inferences therefrom in favor of the plaintiff, that my conclusion to be drawn from those facts is that this is a discretionary function on behalf of the municipalities which, in fact, immunizes them therefore under 2—201."

Because other counts remained pending against the private defendants, the trial court found that its dismissal was final as to the Darien Park District, Darien, and

Downers Grove and that there was no just reason to delay enforcement or appeal pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)). On January 21, 1999, the court dismissed the plaintiffs' claims against Du Page County under section 2—201. This order also contained Rule 304(a) language.

The appellate court affirmed the trial court's dismissals, holding that the defendants enjoyed immunity under section 2—201. The appellate court stated in pertinent part as follows:

> "Defendants, through their employees, used their skill, judgment, and ultimately their discretion to consider the design of the park, its landscaping, and the type of construction. Employees of the defendants, in each of their respective municipal capacities, balanced competing interests when determining whether and how the flow of water should be directed and restricted.
>
> The Act provides for immunity of public entities, such as defendants, which, through their employees, exercised their judgment and discretion when they determined how to design, plan, supervise, observe, or manage the construction of Westwood Park. Therefore, to the extent any adoption of a plan or design of the construction of Westwood Park by defendants caused plaintiffs' damages, the Act precludes recovery from defendants." No. 2—99—0009 (unpublished order under Supreme Court Rule 23).

We allowed plaintiff's petition for leave to appeal. 177 Ill. 2d R. 315. Before this court, plaintiffs argue that the trial and appellate courts misapplied section 2—201 of the Act. For the reasons that follow, we agree and reverse.

## II. ANALYSIS

In the matter before us, the parties dispute whether the circuit court properly granted defendants' section 2—619(a)(9) motions to dismiss plaintiffs' complaint on the basis that section 2—201 of the Tort Immunity Act completely immunized defendants from liability for the acts and omissions stated in plaintiffs' complaint. According to plaintiffs, the circuit court improperly

dismissed their complaint because defendants did not establish that their alleged actions were "discretionary" within the meaning of section 2—201. Defendants counter that the circuit court properly dismissed plaintiffs' complaint under section 2—619(a)(9) because, despite their duty not to alter the natural flow of water onto another's land, they are entitled to absolute immunity regarding all of their decisions with respect to the planning and construction of Westwood Park because all decisions involved the exercise of discretion. Accordingly, defendants argue, their actions fall squarely within the purview of the immunity provided under section 2—201 of the Act. We disagree. For the reasons discussed below, we hold that the circuit court improperly dismissed plaintiffs' claims as to these municipal defendants.

The purpose of a section 2—619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation. *Zedella v. Gibson*, 165 Ill. 2d 181, 185 (1995). Specifically, section 2—619(a)(9) of the Code of Civil Procedure permits involuntary dismissal where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2—619(a)(9) (West 1998). An " 'affirmative matter,' in a section 2—619(a)(9) motion, is something in the nature of a defense which negates the cause of action completely ***." *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 486 (1994). The moving party thus admits the legal sufficiency of the complaint, but asserts an affirmative defense or other matter to defeat the plaintiff's claim. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115 (1993). Immunity under the Act is an affirmative matter properly raised in a section 2—619(a)(9) motion to dismiss. *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 378 (1995). When a court rules on a section 2—619 motion to dismiss, it "must interpret all plead-

ings and supporting documents in the light most favorable to the nonmoving party." *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189 (1997). Our review of a section 2—619 dismissal is *de novo. Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997).

In 1959, this court abolished sovereign immunity from tort claims for municipalities. *Molitor v. Kaneland Community Unit District No. 302*, 18 Ill. 2d 11 (1959). In 1965, the General Assembly responded by enacting the Local Governmental and Governmental Employees Tort Immunity Act. *Zimmerman v. Village of Skokie*, 183 Ill. 2d 30, 43 (1998). The 1970 Illinois Constitution validated both *Molitor* and the Act. *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 344 (1998); see Ill. Const. 1970, art. XIII, § 4 ("Except as the General Assembly may provide by law, sovereign immunity in this State is abolished"); see also Comment, *Illinois Tort Claims Act: A New Approach to Municipal Tort Immunity in Illinois*, 61 Nw. U. L. Rev. 265 (1966).

The Act serves to protect local public entities and public employees from liability arising from the operation of government. 745 ILCS 10/1—101.1(a) (West 1998); see *Epstein*, 178 Ill. 2d at 375.[1] By providing immunity, the General Assembly sought to prevent the dissipation of public funds on damage awards in tort cases. See *Bubb*, 167 Ill. 2d at 378. The Act does not create new duties; rather, it " 'merely codifies those duties existing at common law[ ] to which the subsequently delineated immunities apply.' " *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 490 (2001), quoting *Barnett v. Zion Park District*, 171 Ill. 2d 378, 386 (1996). Since the Act was enacted in derogation of the common law, it must be strictly construed. *Snyder v. Curran Township*, 167 Ill. 2d 466, 477 (1995). Unless an immunity provision ap-

---

[1]The parties do not dispute that the defendants are all local public entities under the Act. See 745 ILCS 10/1—206 (West 1998).

plies, municipalities are liable in tort to the same extent as private parties. See *Barnett*, 171 Ill. 2d at 386.

In the matter at bar, plaintiffs, in their amended complaint, allege substantially identical conduct on the part of each municipal defendant relating to the defendants' involvement in the planning and development of Westwood Park. With respect to each defendant, plaintiffs assert that the defendants "breached their duty to the plaintiffs by causing or allowing a change in the natural groundwater elevation and flow of groundwater to occur resulting in water from adjoining lands to gather on plaintiffs' property and the flooding of plaintiffs' real estate and residence." At common law, a landowner bears a duty not to increase the natural flow of surface water onto the property of an adjacent landowner. See *Templeton v. Huss*, 57 Ill. 2d 134, 141 (1974); *Daum v. Cooper*, 208 Ill. 391, 397-98 (1904); see generally 36 Ill. L. & Prac. § 3, at 53 (1958) ("an upper landowner has no legal right to collect and discharge on to a servient estate any surface water which would not naturally flow in the direction of the servient estate"); 36 Ill. L. & Prac. § 6, at 55-56 (1958) (stating that "[a] landowner may maintain an action to recover the damages suffered by him where another landowner improperly drains surface water onto his land. ***. An action in chancery will also lie to enjoin a property owner from improperly draining surface waters onto another's land to the injury of the latter"). This common law duty applies equally to private and public landowners. Accordingly, a local public entity bears a common law duty not to increase the natural flow of surface water onto the property of an adjacent landowner.

Our inquiry, however, is not concluded. After determining that a duty exists, we must next address whether provisions of the Tort Immunity Act immunize the municipal defendants in the matter at bar from liability

for alleged breaches of this duty. As stated, the Tort Immunity Act adopted the general principle that " 'local governmental units are liable in tort but limited this [liability] with an extensive list of immunities based on specific government functions.' " *Zimmerman*, 183 Ill. 2d at 43, quoting *Burdinie*, 139 Ill. 2d at 506. Moreover, "the existence of a duty and the existence of an immunity are separate issues." *Barnett*, 171 Ill. 2d at 388. The question thus becomes whether the Act insulates the defendants from the plaintiffs' viable common law tort claims. See *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 490 (2001) ("to determine whether [an] entity is liable for the breach of a duty, we look to the Tort Immunity Act, not the common law"). Because the immunities afforded to governmental entities operate as an affirmative defense, those entities bear the burden of properly raising and proving their immunity under the Act. It is only when the governmental entities have met this burden that a plaintiff's right to recovery is barred. *Zimmerman*, 183 Ill. 2d at 44; *Bubb*, 167 Ill. 2d at 378.

The trial and appellate courts held that defendants here met that burden, finding that section 2—201 provides immunity in this case. Section 2—201 extends the most significant protection afforded to public employees under the Act. D. Baum, *Tort Liability of Local Governments and Their Employees: An Introduction to the Illinois Immunity Act*, 1966 U. Ill. L.F. 981, 994. According to section 2—201:

> "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2—201 (West 1998).

We first extensively discussed the scope of section 2—201 immunity in *Snyder v. Curran Township*, 167 Ill.

2d 466 (1995). In *Snyder*, the plaintiff lost control of her van when she encountered a sharp turn at the top of a hill on a rural road. The plaintiff sued Curran Township for its negligent failure to place a warning sign before the curve in conformity with the Illinois Vehicle Code, and the township claimed immunity under section 2—201. On appeal from a jury verdict in favor of the plaintiff, the appellate court held that section 2—201 provided immunity. *Snyder v. Curran Township*, 267 Ill. App. 3d 174 (1994).

This court reversed, observing that the appellate court's erroneous conclusion "rested on an impermissibly expansive definition of discretionary immunity." *Snyder*, 167 Ill. 2d at 472. We rejected the appellate court's reasoning that, unless a specific rule, statute, or legal order mandates a certain course of conduct, a government official can characterize any given action as discretionary and, therefore, immune from liability in tort. *Snyder*, 167 Ill. 2d at 473. We recognized that:

> "the distinction between discretionary and ministerial functions resists precise formulation, and that the determination whether acts are discretionary or ministerial must be made on a case-by-case basis. [Citations.] Indeed, Prosser notes that this distinction is 'finespun and more or less unworkable. *** "It would be difficult to conceive of any official act *** that did not admit of some discretion in the manner of its performance, even if it involved only the driving of a nail." ' " *Snyder*, 167 Ill. 2d at 474, quoting W. Prosser, Torts § 132, at 988-90 (4th ed. 1971), quoting *Ham v. County of Los Angeles*, 46 Cal. App. 148, 162, 189 P. 462, 468 (1920).

We then defined the terms "discretionary" and "ministerial" as follows:

> "[D]iscretionary acts are those which are *unique to a particular public office*, while ministerial acts are those which a person performs on a given state of facts in a *prescribed manner, in obedience to the mandate of legal authority,* and without reference to the official's discretion

as to the propriety of the act." (Emphases added.) *Snyder*, 167 Ill. 2d at 474.

See also *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 343 (1998). We concluded in *Snyder* that the township's duties were more properly characterized as ministerial because the Vehicle Code dictated the placement of warning signs: "Where *** tailored statutory and regulatory guidelines place certain constraints on the decisions of officials, a court should be reluctant to label decisions falling wholly outside the established parameters as 'discretionary.' " *Snyder*, 167 Ill. 2d at 474.

In *Harinek*, this court addressed a question of first impression with respect to section 2—201 of the Act: we considered whether section 2—201 requires that a public entity prove that its act or omission is *both* an exercise of discretion *and* a policy determination before immunity applies. We answered this question in the affirmative. The *Harinek* plaintiff was an office worker who alleged that she was injured during an office fire drill planned and conducted by the City of Chicago's fire marshal. According to the plaintiff, during the fire drill the marshal negligently directed a large group of people, including the plaintiff, to stand in the vicinity of a heavy, windowless door. As a result, the plaintiff was hit and injured when someone opened the door without warning. The plaintiff also alleged that the fire marshal had acted willfully and wantonly because he had been placed on notice that the area where he directed the group to stand was unsuitable for that purpose. *Harinek*, 181 Ill. 2d at 338.

The circuit court granted the City's motion to dismiss the plaintiff's complaint on the ground that the City was immune from liability under section 2—201 of the Act. The appellate court reversed, holding that section 2—201 did not insulate the City from liability because the fire marshal's conduct in "directing plaintiff to stand behind a door, though discretionary, is not a policy determina-

tion within the meaning of the Act." *Harinek v. City of Chicago*, 283 Ill. App. 3d 491, 496 (1996).

This court reversed. We held that, under the plain language of section 2—201, immunity will not attach unless the plaintiff's injury results from an act performed or omitted by the public entity in determining policy *and* exercising discretion. *Harinek*, 181 Ill. 2d at 341. Accordingly, this court conducted a dual-prong inquiry with respect to whether section 2—201 immunity attached. First, we held that the allegations in the plaintiff's complaint described acts and omissions of the fire marshal in determining fire department policy. We noted that this court had previously defined " 'policy decisions made by a municipality' " as " 'those decisions which require the municipality to balance competing interests and to make a judgment call as to what solution will best serve each of those interests.' " *Harinek*, 181 Ill. 2d at 342, quoting *West v. Kirkham*, 147 Ill. 2d 1, 11 (1992). We held in *Harinek* that the allegations in the plaintiff's complaint fell squarely within this definition:

> "The fire marshal is responsible for planning and conducting fire drills in the City of Chicago. In planning these drills, the marshall must balance the various interests which may compete for the time and resources of the department, including the interests of efficiency and safety. The alleged acts and omissions outlined in the complaint, such as the marshal's decisions regarding where to assemble the participants and whether to provide warning signs and alternate routing, were all part of his attempts to balance these interests. Accordingly, these acts and omissions were undertaken in determining policy within the meaning of the statute." *Harinek*, 181 Ill. 2d at 342-43.

We then turned to the second question of whether the acts of the fire marshal were discretionary within the meaning of section 2—201. We observed that, in *Snyder*, discretionary acts were defined as " 'those which are unique to a particular public office.' " *Harinek*, 181 Ill. 2d at 343, quoting *Snyder*, 167 Ill. 2d at 474. Applying

this definition to the facts in that case, we held that the fire marshal's conduct as set forth in the plaintiff's complaint constituted an exercise of discretion:

"The marshal bears sole and final responsibility for planning and executing fire drills in buildings throughout Chicago. He is under no legal mandate to perform these duties in a prescribed manner; rather, he exercises his discretion in determining how, when, and where to hold drills such as the one in which plaintiff was injured." *Harinek*, 181 Ill. 2d at 343.

Accordingly, because the acts and omissions of the fire marshal alleged in the plaintiff's complaint were both a determination of policy and an exercise of discretion, section 2—201 of the Act immunized the City from liability.

This court again addressed discretionary immunity under section 2—201 in *In re Chicago Flood Litigation*, 176 Ill. 2d 179 (1997). *Chicago Flood* involved a dredging company hired by the City of Chicago to replace bridge piling clusters. Numerous downtown businesses were flooded when a tunnel wall under the Chicago River was breached during pile driving. A class of plaintiffs sued the dredging company and the City. The plaintiffs alleged that the City failed to supervise the pile driving; failed to maintain, repair, and protect the tunnel before and after the breach; and failed to warn the plaintiffs about the flood danger after learning of the breach. The trial court denied the City's motion to dismiss on immunity grounds and certified several questions for review, including whether the Act shielded the City from the plaintiffs' claims. The appellate court held that the City's supervision of the pile driving was discretionary under section 2—201.

We affirmed the appellate court, noting the common law distinction between discretionary and ministerial acts. *Chicago Flood*, 176 Ill. 2d at 193-94. The plaintiffs argued that once the City approved the pile-driving plan its actions became ministerial and the City became liable

for negligent supervision. *Chicago Flood*, 176 Ill. 2d at 194-95. We disagreed, holding that the City's broad supervisory power over the dredging company's pile driving was a discretionary act because the City retained broad contractual "discretion to locate the pilings in any location it thought best." *Chicago Flood*, 176 Ill. 2d at 195.

In *Harrison v. Hardin County Community Unit School District No. 1*, 197 Ill. 2d 466 (2001), the plaintiff was injured when she collided with a high school student who lost control of his vehicle as he drove home from school in inclement weather. Plaintiff sued the school district alleging that its personnel acted willfully and wantonly in refusing the student's request to leave school early because he feared getting into an accident due to the heavy snow. The school district moved to dismiss the plaintiff's complaint on the basis that it was immunized from liability under section 2—201 of the Act. We began our analysis by reiterating our holding in *Harinek* that section 2—201 requires that the alleged acts or omissions committed by a municipality must be "both a determination of policy and an exercise of discretion." *Harrison*, 197 Ill. 2d at 472, citing *Harinek*, 181 Ill. 2d at 341. The parties in *Harrison* agreed that the decision by the school principal to refuse the student's request to leave school early was "discretionary" in nature, because his actions were " 'those which are unique to a particular public office.' " *Harrison*, 197 Ill. 2d at 472, quoting *Snyder*, 167 Ill. 2d at 474. However, the parties disagreed as to whether the principal was determining policy when he denied the student's request.

In *Harrison*, we repeated our prior statement that "policy decisions [are] those that require the governmental entity or employee to balance competing interests and to make a judgment call as to what solutions will best serve each of those interests." *Harrison*, 197 Ill. 2d at

472. Under the facts presented, we found that the school principal had to "balance the competing interests of [the student's] desire to leave early before the weather worsened with that of the school's interest in an orderly dismissal, along with the possibility that if one student was dismissed early then, in the future, every student would want to leave early. [The principal] then had to make a judgment as to how best to perform his duties as principal and find a solution that best served all of these interests." *Harrison*, 197 Ill. 2d at 474. Accordingly, we held that the actions of the school principal constituted policy determinations within the meaning of section 2—201. *Harrison*, 197 Ill. 2d at 474.

Finally, in *Arteman v. Clinton Community Unit School District No. 15*, 198 Ill. 2d 475 (2002), this court held that a school district's decision not to provide in-line skating safety equipment to students was a discretionary policy determination immunized under section 2—201. In arriving at this determination, we once again reiterated that section 2—201 immunity requires that the act or omission be both a determination of policy and an exercise of discretion, and once again quoted from *Snyder* the definition that " 'discretionary acts are those which are unique to a particular public office.' " *Arteman*, 198 Ill. 2d at 484-85, quoting *Snyder*, 167 Ill. 2d at 474.

With our section 2—201 precedent in mind, we now turn to the present case. In the matter before us, the legal sufficiency of plaintiffs' action, including plaintiffs' allegations that defendants acted in concert to achieve their objective of building Westwood Park, is admitted by defendants' section 2—619(a)(9) dismissal motions. Nevertheless, in separate motions to dismiss, defendants asserted that they were absolutely immune from liability under section 2—201 of the Tort Immunity Act, because the allegations in plaintiffs' complaint involve acts or

omissions that are discretionary in nature. As stated, section 2—619(a)(9) of the Code of Civil Procedure allows involuntary dismissal of a plaintiff's claim where the claim is "barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2—619(a)(9) (West 1994). Immunity from suit under the Tort Immunity Act is an "affirmative matter" properly raised under section 2—619(a)(9). *Bubb*, 167 Ill. 2d at 378. It is well settled that the "affirmative matter" asserted by the defendant must be apparent on the face of the complaint; otherwise, the motion must be supported by affidavits or certain other evidentiary materials. *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997); *Kedzie & 103rd Currency Exchange, Inc.*, 156 Ill. 2d at 116. Once a defendant satisfies this initial burden of going forward on the section 2—619(a)(9) dismissal motion, the burden then shifts to the plaintiff to establish that the defense is " 'unfounded or requires the resolution of an essential element of material fact before it is proven.' " *Epstein*, 178 Ill. 2d at 383, quoting *Kedzie & 103rd Currency Exchange, Inc.*, 156 Ill. 2d at 116. " 'If, after considering the pleadings and affidavits, the trial judge finds that the plaintiff has failed to carry the shifted burden of going forward, the motion may be granted and the cause of action dismissed.' " *Epstein*, 178 Ill. 2d at 383, quoting *Kedzie & 103rd Currency Exchange, Inc.*, 156 Ill. 2d at 116. Because a dismissal under section 2—619(a)(9) resembles the grant of a motion for summary judgment, an appeal from a section 2—619(a)(9) dismissal is the same in nature as an appeal following a grant of summary judgment, and is likewise afforded *de novo* review. *Epstein*, 178 Ill. 2d at 383; *Kedzie & 103rd Currency Exchange, Inc.*, 156 Ill. 2d at 116. The reviewing court must consider whether " 'the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether

dismissal is proper as a matter of law.' " *Epstein*, 178 Ill. 2d at 383, quoting *Kedzie & 103rd Currency Exchange, Inc.*, 156 Ill. 2d at 116.

As an initial matter, we note that defendant Village of Downers Grove filed with this court a motion to strike section I of plaintiff's reply brief, pursuant to our Rule 341(g) (188 Ill. 2d R. 341(g)). Rule 341(g) provides that the reply brief "shall be confined strictly to arguments presented in the brief of the appellee." According to the Village, section I of plaintiffs' reply brief presents, for the first time, the argument that section 2—201 of the Tort Immunity Act should not apply to defendants because the alleged tortious acts at issue were not "discretionary" in that they were not "unique" to the particular public offices of the government entities involved. The Village asserts that this "unique to a particular public office" argument does not appear in any brief filed by a defendant in the instant action and, therefore, section I of plaintiffs' reply is not confined strictly to the arguments presented in the responsive briefs of appellees. This court entered an order directing that this motion be taken with the case.

We now deny the Village's motion to strike section I of plaintiffs' reply brief. In their respective response briefs, defendants argue that their actions were "discretionary" within the meaning of section 2—201. This court has repeatedly defined "discretionary" actions for purposes of section 2—201 immunity as actions " 'unique to a particular public office.' " *Arteman*, 198 Ill. 2d at 484-85, quoting *Snyder*, 167 Ill. 2d at 474; *Harrison*, 197 Ill. 2d at 472; *Harinek*, 181 Ill. 2d at 343. Furthermore, the record discloses that, in the circuit court, the plaintiffs and defendants presented specific argument as to whether the actions were "unique" to the particular public offices of the defendants. We hold that plaintiffs' discourse in their reply brief with respect to whether the

alleged actions were "unique" to the defendants' particular public offices was in answer to the arguments advanced by defendants that their actions were "discretionary" within the meaning of section 2—201.

We now turn to the central question of whether defendants adequately established their affirmative defense that they were entitled to absolute immunity from plaintiffs' claims under section 2—201 of the Act. As we have outlined above, our cases have made clear that there is a distinction between situations involving the making of a policy choice and the exercise of discretion. Municipal defendants are required to establish both of these elements in order to invoke immunity under section 2—201. *Arteman,* 198 Ill. 2d at 484-85; *Harrison,* 197 Ill. 2d at 472; *Harinek,* 181 Ill. 2d at 341; and *Snyder,* 167 Ill. 2d at 474. In the case at hand, the municipal defendants have failed to establish either element.

Regarding the policy decision element, in general, formulating a plan for the construction of a park should require the consideration of site-specific conditions and the balancing of competing interests. As discussed above, this court has held that decisions requiring a governmental entity to balance competing interests and to make a judgment call as to what solution will best serve those interests are "policy decisions" within the meaning of section 2—201. *Arteman,* 198 Ill. 2d at 484; *Harrison,* 197 Ill. 2d at 472; *Harinek,* 181 Ill. 2d at 342-43. This "affirmative matter" asserted by defendants to defeat plaintiffs' viable claims, namely, that defendants' actions and omissions were the result of a policy decision, is not apparent on the face of the complaint. See *Epstein,* 178 Ill. 2d at 383; *Kedzie & 103rd Currency Exchange, Inc.,* 156 Ill. 2d at 116. Neither is the assertion supported by affidavit or other evidentiary materials of record. See *Epstein,* 178 Ill. 2d at 383; *Kedzie & 103rd Currency Exchange, Inc.,* 156 Ill. 2d at 116.

The municipal defendants have likewise failed to establish that their alleged actions or omissions were "discretionary" as contemplated by section 2—201. As stated, this court has defined "discretionary" actions to be those " 'unique to a particular public office.' " *Arteman*, 198 Ill. 2d at 484-85, quoting *Snyder*, 167 Ill. 2d at 474; *Harrison*, 197 Ill. 2d at 472; *Harinek*, 181 Ill. 2d at 343. That defendants' alleged activities were unique to their particular offices is neither apparent on the face of the complaint nor supported by affidavit or other evidentiary material. See *Epstein*, 178 Ill. 2d at 383; *Kedzie & 103rd Currency Exchange, Inc.*, 156 Ill. 2d at 116.

Because the Tort Immunity Act is in derogation of the common law, it must be strictly construed against the public entities involved. *Zimmerman*, 183 Ill. 2d at 44, quoting *Aikens v. Morris*, 145 Ill. 2d 273, 278 (1991). Questions of material fact remain as to whether the conduct of the municipal defendants in the matter at bar was the result of a "policy decision" and "discretionary" within the meaning of section 2—201. We, therefore, hold that, in the matter at bar, defendants have not met their burden, as set forth in section 2—619(a)(9) of the Code of Civil Procedure, of establishing their affirmative defense under section 2—201 of the Act.

### III. CONCLUSION

For the foregoing reasons, we hold that the trial and appellate courts erred by finding that section 2—201 insulates defendants' alleged conduct from liability. We hold that the municipal defendants did not meet their burden under section 2—619(a)(9) of the Code of Civil Procedure to establish that their actions were the result of a policy decision and discretionary within the meaning of section 2—201 of the Tort Immunity Act. Accordingly, we reverse the judgments of the trial and appellate courts and remand this cause to the circuit court for further proceedings consistent with this opinion.

*Reversed and remanded.*

JUSTICE THOMAS took no part in the consideration or decision of this case.

JUSTICE FITZGERALD, dissenting:

Though the majority holds that the trial court "improperly dismissed" the plaintiffs' claims (207 Ill. 2d at 367), it does not answer the question presented by this case: namely, whether the municipal defendants are entitled to immunity under section 2—201 of the Tort Immunity Act for their park-planning decisions. Instead, without any invitation from the parties, the majority transforms this case from an immunity case into a pleading case, stretching to do procedurally what it could not do substantively—remand to give the plaintiffs another day in court. While I applaud the majority's conclusion as a noble attempt to achieve an equitable result for the plaintiffs, this conclusion is both legally indefensible and unnecessary.

By filing a motion to dismiss under section 2—619(a)(9) of the Code of Civil Procedure, the defendants acknowledged that the plaintiffs have a viable tort claim (see *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115 (1993)), but they also contended that "other affirmative matter" in the form of a defense under section 2—201 of the Act defeats the claim because their park-planning decisions were discretionary. Because the defendants did not support their motion with evidentiary materials, the question thus becomes whether the existence of this defense appears on the face of the plaintiffs' complaint. See *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997).

The majority concludes that the defendants here failed to meet "their burden [under section 2—619(a)(9)] of establishing their affirmative defense" under the Act. 207 Ill. 2d at 380. Following *Harinek v. 161 North Clark*

*Street Ltd. Partnership*, 181 Ill. 2d 335 (1998), the majority bifurcates its section 2—201 analysis. First, the majority states that the face of the plaintiffs' complaint does not indicate the defendants' park-planning decisions were "policy decisions" requiring them to balance competing interests before choosing a course of action. Second, the majority states that the face of the plaintiffs' complaint does not indicate the defendants' park-planning decisions were "discretionary" or unique to their particular offices.

Though the majority does not refer to section 2—619(a)(6) in its discussion of the section 2—201 case law, the majority in effect raises the level of pleading specificity required before a court can find an "other affirmative matter" defense on the face of the complaint. Even a cursory examination of these cases, however, reveals that we have never sought such a close connection between the plaintiffs' allegations and the immunity claimed by the defendants.

*Snyder v. Curran Township*, 167 Ill. 2d 466 (1995), involved a jury trial, and *Harrison v. Hardin County Community Unit School District No. 1*, 197 Ill. 2d 466 (2001), involved a summary judgment motion, not section 2—619(a)(9) motions to dismiss. In *In re Chicago Flood Litigation*, 176 Ill. 2d 179 (1997), which involved motions to dismiss under both section 2—615 and section 2—619, we stated that the plaintiffs did not allege there was a prescribed method for repairing the tunnel or for notifying landowners of its breach. We then observed: "[T]he City had to make several decisions following its notice of the tunnel breach. *** All of these decisions were within the City's discretion, which is afforded immunity against liability." *Chicago Flood*, 176 Ill. 2d at 197. Without dissecting the complaint, we simply concluded that the City's decisions were discretionary.

Then came *Harinek*, where we refined our understanding of discretionary immunity by holding that a municipal defendant's activities must be both policy-determining and discretionary. In *Harinek*, the plaintiff alleged that the City of Chicago fire department "planned, controlled, operated, and implemented" a fire drill and that the City's fire marshall, pursuant to a plan, positioned the plaintiff near a door that struck her during the drill. *Harinek*, 181 Ill. 2d at 342. After reviewing the plaintiff's allegations, we held that they "describe acts and omissions of the fire marshal in determining fire department policy" (*Harinek*, 181 Ill. 2d at 342) and "the fire marshal's conduct described in the complaint clearly constituted an exercise of discretion" (*Harinek*, 181 Ill. 2d at 343). Again, we did not engage in a probing examination of the complaint to determine whether its allegations implicated an immunity defense under section 2—201 before concluding that the City's activities were discretionary. Finally, in *Arteman v. Clinton Community Unit School District No. 15*, 198 Ill. 2d 475 (2002), our most recent pronouncement on discretionary policy immunity, we briefly referred to the allegations of the plaintiffs' complaint, but only in the background of the opinion, and concluded the school district's activities were discretionary.

Further, the majority does not even apply the pleading rule it creates. The complaint here was certainly no less descriptive than that in *Harinek*. As the majority correctly observes, the plaintiffs

"allege substantially identical conduct on the part of each municipal defendant relating to the defendants' involvement in the planning and development of Westwood Park. With respect to each defendant, plaintiffs assert that the defendants 'breached their duty to the plaintiffs by causing or allowing a change in the natural groundwater elevation and flow of groundwater to occur resulting in water from adjoining lands to gather on plaintiffs' property

and the flooding of plaintiffs' real estate and residence.' "
207 Ill. 2d at 369.

In fact, the plaintiffs alleged much more. According to their amended complaint, one or more of the defendants "commenced the design and planning for construction" of the park project; retained a civil engineering firm and an architectural firm for the project; "jointly produced a Schedule of Drawings and specifications" or a plan for the project depicting water drainage; "caused to be designed and constructed a storm water drainage and detention system *** [and other] improvements to real estate"; approved the plan and accepted the public improvements to the park; and were "otherwise involved in the design, planning, supervision, observation and/or management of this construction."

Certainly, these activities involved balancing competing interests and making decisions unique to these defendants. It defies reason to conclude that the defendants planned a park and implemented that plan without deciding among alternatives and that these decisions were not unique to these defendants. Who else besides the defendants here—the Darien Park District, the City of Darien, the Village of Downers Grove, and the County of Du Page—would make such decisions regarding a park situated between Darien and Downers Grove in Du Page County? These allegations on their face clearly describe a discretionary policy decision, and the defendants were clearly entitled to immunity. Instead, the majority concludes that this case should be remanded to the trial court where the municipal defendants will, in all likelihood without delay, file legally dispositive affidavits asserting that they balanced competing interests before choosing a park plan and that this activity was unique to their offices. The plaintiffs have won this battle, but they will ultimately lose the war.

The majority's decision does unnecessary violence to our case law, in light of the plaintiffs' ability to pursue

other avenues of relief. Though the plaintiffs have not asked for it, injunctive relief, against which the Act provides no protection, is available in municipal flooding cases. 745 ILCS 10/2—101 (West 1998); see *Romano v. Village of Glenview*, 277 Ill. App. 3d 406, 411 (1995) (a municipality's decision to dig retaining ponds on a golf course near the plaintiff homeowners' property, which resulted in flooding, was an "unreasonable" interference with homeowners' property rights and not subject to immunity from injunctive relief); *Salzman v. Sumner Township*, 162 Ill. App. 3d 92, 95 (1987) (an award of money damages against a municipality for diverting the natural flow of surface waters "would be inadequate"); see also *Barrington Hills Country Club v. Village of Barrington*, 357 Ill. 11 (1934); *Springer v. City of Chicago*, 308 Ill. 356 (1923); *Elser v. Village of Gross Point*, 223 Ill. 230 (1906); *Young v. Commissioners of Highways*, 134 Ill. 569 (1890); *Smith v. City of Woodstock*, 17 Ill. App. 3d 948 (1974); *Larson v. Village of Capron*, 3 Ill. App. 3d 764 (1972).

Additionally, though the plaintiffs have not pleaded them, constitutional claims under 42 U.S.C. § 1983 are not barred by the Act. See *Firestone v. Fritz*, 119 Ill. App. 3d 685, 689 (1983), citing *Hampton v. City of Chicago*, 484 F.2d 602, 607 (7th Cir. 1973); see also *Howlett v. Rose*, 496 U.S. 356, 376, 110 L. Ed. 2d 332, 353, 110 S. Ct. 2430, 2443 (1990). The flooding of private property caused by a public improvement may effect an unconstitutional taking.

"A city may elevate or depress its streets, as it thinks proper, but if, in so doing, it turns a stream of mud and water upon the grounds and into the cellars of one of its citizens, or creates in his neighborhood a stagnant pond that brings disease upon his household, upon what ground of reason can it be insisted, that the city should be excused from paying for the injuries it has directly wrought?

It is said that the city must grade streets and direct the

flow of waters as best as it can for the interests of the public. Undoubtedly, but if the public interest requires that the lot of an individual shall be rendered unfit for occupancy, either wholly or in part, in this process of grading or drainage, why should not the public pay for it to the extent to which it deprives the owner of its legitimate use? Why does not the constitutional provision apply as well to secure the payment for property partially taken for the use or convenience of a street, as when wholly taken and converted into a street? *** To the extent to which the owner is deprived of its legitimate use and in so far as its value is impaired, to that extent he should be paid.

*** In our opinion, the theory that private rights are ever to be sacrificed to public convenience or necessity, without full compensation, is fraught with danger, and should find no lodgment in American jurisprudence. ***

* * *

*** We are unable to see why the property of an individual should be sacrificed for the public convenience without compensation. We do not think it sufficient to call it *damnum absque injuria*. We know our Constitution was designed to prevent these wrongs. We are of opinion, that, for injuries done to the property of the [business owner], by turning a stream of mud and water upon his premises, or by creating in the immediate neighborhood of his dwelling an offensive and unwholesome pond, if the jury find these things to have been done, the city *** must respond in damages." *Nevins v. City of Peoria*, 41 Ill. 502, 510-11, 515 (1866).

Accord *City of Dixon v. Baker*, 65 Ill. 518, 520 (1872) ("If municipal corporations can raise the grade of streets at discretion, and not provide suitable gutters to carry off the surface water, and thus overflow the lands abutting upon the streets, with impunity, then the owners of lots in our towns and cities are entirely at the mercy of the authorities of the municipality"); see *Graham v. Keene*, 143 Ill. 425 (1892); *Stack v. City of East St. Louis*, 85 Ill. 377 (1877); *City of Bloomington v. Brokaw & Gregory*, 77 Ill. 194 (1875); *City of Aurora v. Reed*, 57 Ill. 29 (1870);

*City of Aurora v. Gillett*, 56 Ill. 132 (1870); *Drainage District #1 v. Village of Green Valley*, 69 Ill. App. 3d 330, 335 (1979); *Dwyer v. Village of Glen Ellyn*, 314 Ill. App. 572 (1942) (abstract of op.); *City of Highland v. Auer*, 235 Ill. App. 327 (1925); see generally G. Ratcliff, *Private Rights under Illinois Drainage Law*, 1960 U. Ill. L.F. 198, 208 ("A city has no right to change a watercourse without being liable to an adjoining landowner for any resulting damage"); K. Roberts, Note, *Tort Liability of Municipal Corporations in Illinois*, 1951 U. Ill. L.F. 637, 645 ("The law seems to be well settled in Illinois that a municipal corporation may not construct public works and improvements in such a way as to cause surface water to flow in a different manner or in a substantially increased quantity upon the land of private owners").[2]

In short, the majority need not warp our case law under section 2—201 of the Act just to give the plaintiffs' tort claims an illusory second life. Though section 2—201 bars the plaintiffs' tort claims, properly pleaded injunctive relief and constitutional claims could survive under the Act. I dissent.

JUSTICE GARMAN joins in this dissent.

JUSTICE GARMAN, also dissenting:

I join Justice Fitzgerald's dissent. I write separately to explain why I agree with Justice Fitzgerald that it is

---

[2]The State also would be liable for such damage. See, *e.g.*, *Branding v. State*, 31 Ill. Ct. Cl. 455, 457 (1977) ("one who negligently alters the natural flow of water on the property of an adjacent landowner, thereby causing damage, is liable to such abutting landowner"); *Eckmann v. State*, 45 Ill. Ct. Cl. 282 (1993); *Vickroy v. State*, 31 Ill. Ct. Cl. 489 (1977); *Mount v. State*, 31 Ill. Ct. Cl. 299 (1977); *Shilling v. State*, 24 Ill. Ct. Cl. 395 (1963); *Doerr v. State*, 22 Ill. Ct. Cl. 314 (1956); see also *Herget National Bank of Pekin v. Kenney*, 105 Ill. 2d 405 (1985).

clear from the face of the complaint that the defendants were entitled to immunity.

The majority holds that it is not apparent on the face of the complaint that the defendants' actions were (1) the result of a policy decision (207 Ill. 2d at 379) and (2) discretionary (207 Ill. 2d at 380). The complaint alleges that the defendants planned and built a park that now causes flooding on plaintiffs' property. The allegation that the defendants planned and built a park clearly entails that the defendants' actions were the result of policy decisions and were discretionary.

The majority correctly states that "decisions requiring a governmental entity to balance competing interests and to make a judgment call as to what solutions will best serve those interests are 'policy decisions' within the meaning of section 2—201." 207 Ill. 2d at 379. The majority also states that planning a park "should require the consideration of site-specific conditions and the balancing of competing interests." 207 Ill. 2d at 379. When the majority concludes that it is not apparent on the face of the complaint that the park was a result of policy decisions, it assumes that, although planning a park *should* require the balancing of competing interests, it need not.

This assumption is mistaken. Planning a park (or an airport or any other substantial project) obviously involves weighing competing interests and therefore always involves policymaking. The fact that the park was planned means that someone made a conscious decision. Making a conscious decision means that some interests were weighed more heavily than others.

Because planning means weighing competing interests, it is not clear what more the defendants must show to establish that they made policy decisions when they planned the park. Is it enough simply to file affidavits that assert the obvious fact that when they planned they

weighed competing interests? I am concerned that our decision today may be misinterpreted by courts to mean that a defendant is not immune under section 2—201 unless he shows that he duly weighed the plaintiff's interests. It is important to bear in mind that section 2—201, by its very terms, immunizes *all* good-faith policy decisions that involve discretion, even if the discretion is abused. See *White v. Village of Homewood*, 285 Ill. App. 3d 496, 502 (1996).

The majority states that we have "defined 'discretionary' actions to be those ' "unique to a particular public office." ' " 207 Ill. 2d at 380, quoting *Arteman*, 198 Ill. 2d at 484-85, quoting *Snyder*, 167 Ill. 2d at 474. It then holds that it is not apparent from the face of the complaint that the defendants' alleged activities were unique to their particular offices. 207 Ill. 2d at 380. Although I agree that whether the defendants' activities were unique to their office is relevant, I do not agree that it provides the sole test of whether their actions were discretionary.

We first used the phrase "unique to a particular public office" to describe discretionary acts under section 2—201 in *Snyder v. Curran Township*, 167 Ill. 2d 466 (1995). There, however, we concluded that Curran Township's failure to place a sign warning of a curve in conformity with the State Manual was a ministerial act not subject to immunity due, in part, to the fact that statutory and regulatory guidelines placed certain constraints on the decisions of officials. *Snyder*, 167 Ill. 2d at 474.

In addition to *Snyder*, the majority discusses *In re Chicago Flood Litigation*, 176 Ill. 2d 179 (1997), *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335 (1998), *Harrison v. Hardin County Community Unit School District No. 1*, 197 Ill. 2d 466 (2001), and *Arteman v. Clinton Community Unit School District No. 15*,

198 Ill. 2d 475 (2002). In *Chicago Flood*, the City of Chicago (the City) hired Great Lakes Dredge and Dock Company (Great Lakes) to remove and replace wood piling clusters at several city bridges. The City noted in the contract that the pilings were to be located at specified positions to prevent serious damage to underground structures. Great Lakes, however, installed the pilings at one bridge in a location other than originally designated in the contract. This caused a breach in the wall of an underground freight tunnel, which resulted in the flooding of numerous downtown businesses.

In determining whether the City was immune under section 2—201 of the Act, we noted that a municipality exercises discretion " 'when it selects and adopts a plan in the making of public improvements, such as constructing sewers or drains; but [it acts ministerially when] it begins to carry out that plan *** and is bound to see that the work is done in a reasonably safe and skillful manner.' " *Chicago Flood*, 176 Ill. 2d at 194, quoting *City of Chicago v. Seben*, 165 Ill. 371, 377-78 (1897). We concluded that the City was immune under section 2—201 because it retained discretion to determine the location of the pile drivings and because the plaintiffs failed to allege a prescribed method for repairing the tunnel and warning the plaintiffs of the tunnel breach. *Chicago Flood*, 176 Ill. 2d at 196-97. In finding the City's actions to be discretionary and, thus, immune from liability, we did not discuss whether the acts were unique to the City.

In *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335 (1998), we discussed whether the conduct of a City of Chicago fire marshal involved the exercise of discretion under section 2—201. The complaint alleged that a decision by the fire marshal about how to conduct a fire drill was negligent. *Harinek*, 181 Ill. 2d at 338. In concluding that the fire marshal exercised his discretion, we stated: "The marshal bears

sole and final responsibility for planning and executing fire drills in buildings throughout Chicago. He is under no legal mandate to perform these duties in a prescribed manner; rather, he exercises his discretion in determining how, when, and where to hold drills such as the one in which plaintiff was injured." *Harinek*, 181 Ill. 2d at 343. Certainly, the point that the fire marshal bears sole responsibility for fire drills goes to the question of uniqueness. But uniqueness was not the only basis for our holding. We also observed that the marshal is not constrained by any legal mandate in deciding how to hold the drills.

In *Harrison v. Hardin County Community Unit School District No. 1*, 197 Ill. 2d 466 (2001), we were called upon to decide whether the school district was immune from liability for injuries allegedly caused by a high school principal's decision not to allow a student to leave school early to avoid driving home in inclement weather. Although we quoted the sentence from *Snyder* that states that discretionary acts are those which are unique to the office, we also made clear that the question whether the principal's action was discretionary was not before us because the parties agreed that it was discretionary. *Harrison*, 197 Ill. 2d at 472.

Finally, in *Arteman v. Clinton Community Unit School District No. 15*, 198 Ill. 2d 475 (2002), we held that a school district's decision not to provide roller-blade safety equipment was both a policy decision and discretionary. Again, although we quoted the language from *Snyder*, we did not apply it to conclude that the school district exercised discretion. Rather, we followed several opinions of the appellate court that held that a school district's decision not to provide safety equipment was discretionary. *Arteman*, 198 Ill. 2d at 485. *Arteman* was primarily concerned with whether the appellate court was mistaken when it held that the common law

duty of school districts to provide reasonably necessary safety equipment trumps the immunity provided by section 2—201 (*Arteman*, 198 Ill. 2d at 487), not with whether the defendants were immune.

Thus, in none of the cases discussed by the majority have we decided whether an action was discretionary based solely on a determination of whether it was unique to the actor's office. I would hold that the proper inquiry is the one we followed in *Harinek* to hold that the fire marshal's actions were discretionary. *Harinek*, 181 Ill. 2d at 343. First we should ask: Where does the official whose action is challenged stand in the relevant hierarchy of decisionmakers? Did he bear the sole and final responsibility for the decision in question, or was his decision to act as he did subject to review and approval by others? The higher the official stood in the relevant chain of command, the more likely it is that he acted with discretion for the purposes of section 2—201. This prong of the inquiry captures what "uniqueness" means as actually applied in *Harinek*. Second, we should also ask to what extent the official in question was subject to a legal mandate to act in a prescribed manner. The less his freedom to act was restricted by legal mandate, the more likely it is that he acted with discretion for the purposes of section 2—201.

Applying this inquiry to the facts of this case, I would hold that it is apparent from the face of the complaint that defendants' actions were discretionary. Their decisions with respect to the park were not subject to review or approval by any higher decisionmaker, nor were they required by legal mandate to adopt any particular plan or kind of plan.

For these reasons, I respectfully dissent.

JUSTICE FITZGERALD joins in this dissent.