**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190076-U

Order filed November 2, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| T.S., a Minor, by his Mother and Next Friend, VITINEE HARRISON, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0076 Circuit No. 17-L-1034 |
| JOLIET PUBLIC SCHOOLS DISTRICT 86 and LYNNE THIGPEN ELEMENTARY SCHOOL, | ) ) ) | Honorable Raymond E. Rossi, |
| Defendants-Appellees. | ) ) | Judge, presiding. |

JUSTICE DAUGHERITY delivered the judgment of the court.
Justice O'Brien concurred in the judgment.
Justice Schmidt dissented.

**ORDER**

¶ 1     *Held*:   The trial court erred in granting defendant's motion to dismiss pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2016)), where: (1) defendants did not raise an affirmative matter barring or defeating the claim in relation to their contention of a lack of actual or constructive notice pursuant to section 3-102(a) of the Tort Immunity Act; and (2) a material and genuine disputed question of fact was raised related to defendants' contention of immunity pursuant to section 3-102(b) of the Tort Immunity Act and a jury demand had been filed by plaintiff.

¶ 2 Plaintiff, T.S., a minor, by his mother and next friend, Vitinee Harrison, brought a negligence action against defendants, Joliet Public Schools District 86 (District 86) and Lynne Thigpen Elementary School (Thigpen Elementary School or school), after T.S. fell in the bathroom at the school. Defendants filed a motion to dismiss pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2016)), contending they were immune from liability pursuant to section 3-102 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/3-102 (West 2016)). The trial court granted defendants' section 2-619(a)(9) motion to dismiss with prejudice. Plaintiff appeals, arguing the trial court erred granting defendants' motion to dismiss. We reverse and remand.

¶ 3                                      I. BACKGROUND

¶ 4                                      A. Complaint

¶ 5 T.S., a minor, by his mother and next friend, Vitinee Harrison, filed a complaint against defendants, District 86 and Thigpen Elementary School. In the complaint, plaintiff alleged that District 86 was responsible for the governance, organization, and financial oversight of all public schools within District 86 and, at all relevant times, operated, managed, and maintained Thigpen Elementary School in Joliet, Illinois. Plaintiff further alleged that on October 31, 2017, T.S. entered the boys' bathroom at Thigpen Elementary School during his "lunch recess" and slipped on a liquid substance on the floor. Plaintiff contended that defendants breached their duty of care to T.S. by: allowing a liquid substance to remain on the floor of the boys' bathroom; failing to promptly remove the liquid substance; failing to make reasonable inspections of the premises and of the boys' bathroom when defendants knew or should have known that inspection was necessary to prevent injury to students; failing to warn students of the dangerous condition of the

2

floor in the boys' bathroom when defendants knew or should have known that warning was necessary to prevent injury; and improperly operating, managing, maintaining, and controlling the premises so as to allow a dangerous condition to remain a hazard to students. Plaintiff contended that as a direct and proximate result of one or more of defendants' negligent acts and/or omissions, T.S. incurred injuries, experienced (and will continue to experience) pain and suffering, suffered a lasting disability, incurred (and will continue to incur) substantial medical expenses, and was otherwise affected in the ability to perform the routine activities of daily living.

¶ 6                               B. Motion to Dismiss

¶ 7        Defendants filed a motion to dismiss the complaint pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2016)). In their motion, defendants argued that, as municipal entities, they were immune from liability pursuant to section 3-102(a) and (b) of the Tort Immunity Act (745 ILCS 10/3-102(a), (b) (West 2016)). Defendants contended that under section 3-102 of the Tort Immunity Act, they were immune from liability in three ways: (1) under section 3-102(a) they were immune from liability because they did not have actual or constructive notice as a matter of law; (2) under section 3-102(b)(1), they were immune from liability because a reasonably adequate inspection system (considering the practicability and cost of inspection weighed against the likelihood and magnitude of the potential danger) would not have discovered the alleged condition; and (3) under section 3-102(b)(2), they were immune from liability because defendants maintained and operated an inspection system with due care and did not discover the condition.

¶ 8        Specifically, defendants argued that the alleged liquid substance on the floor of the subject bathroom could not have been present for longer than three hours and had not been

3

reported, so that they, therefore, did not have constructive notice of the alleged condition as a matter of law and were immune from liability under section 3-102(a) of the Tort Immunity Act. Defendants also argued that they were immune from liability pursuant to section 3-102(b)(1) of the Tort Immunity Act because they had a reasonably adequate inspection system in place and being required to conduct more frequent bathroom inspections "would be only slightly more likely than the current system to identify the presence of water on the floor and would be excessively costly and unreasonable given the nature of the defect," where, given the very nature of a bathroom, small amounts of water on the floor were unavoidable, it was unreasonable to expect a restroom to be free of water on the floor, and it would place an unreasonable burden on the public entities to require "constant vigilance and inspections of the premises." Defendants contended that not even an hourly inspection system would prevent water from still ending up on a bathroom floor of a recently inspected bathroom. Defendants further contended that they were immune from liability pursuant to section 3-102(b)(2) of the Tort Immunity Act because they did not have actual notice of the alleged liquid substance on the floor of the subject bathroom and they maintained and operated a reasonably adequate inspection system with due care and did not discover the condition.

¶ 9        According to affidavits attached to defendants' motion to dismiss, on October 31, 2017, there were 670 students enrolled at Thigpen Elementary and 14 student bathrooms in the building. At that time, Tom Sheridan was the building engineer of Thigpen Elementary and had many job duties, including the maintenance of the entire school as well as dealing with other incidents as they arose.

¶ 10        In his affidavit, Sheridan indicated that his custom, practice, and routine was to inspect and clean the subject bathroom at least three times per day, and sometimes he did so four times

4

per day. Pursuant to his custom and routine, Sheridan inspected the subject bathroom between 6:00 a.m. and 7:00 a.m., 9:00 a.m. and 10:00 a.m., and 2:00 p.m. and 3:00 p.m. Sheridan would typically also inspect the subject bathroom between 11:00 a.m. and 2:00 p.m., if there was time to do so and there were no other pressing matters. When Sheridan performed an inspection, he would pay particular attention to the condition of the floor and determine whether there was any water or other substance on the floor. If Sheridan had observed any water or other substance on the floor of the subject bathroom during any of his inspections on October 31, 2017, Sheridan would have immediately set out cones indicating the floor was wet and would have cleaned the area. On October 31, 2017, Sheridan inspected the bathroom between 6:00 a.m. and 7:00 a.m., 9:00 a.m. and 10:00 a.m., and 2:00 p.m. and 3:00 p.m., and did not discover any condition of a liquid substance on the floor as was alleged in plaintiff's complaint.

¶ 11    According to the affidavit of Kim Gordon, the principal of Thigpen Elementary, on October 31, 2017, students arrived at the school between 8:30 a.m. and 9:00 a.m., with class beginning at 9:00 a.m. There were four lunch periods during the school day, with T.S.'s lunch period taking place from 11:50 a.m. to 12:10 p.m. In general, the subject bathroom was rarely used by students prior to T.S.'s lunch period. The bathroom policy during lunchtime allowed for only one student per each of the eight lunch tables to go to the bathroom at one time. Gordon typically supervised the lunchroom and was present during T.S.'s lunch period on October 31, 2017. On October 31, 2017, T.S. used the subject restroom during his lunch period, returned to the lunchroom a few minutes later, and indicated to Gordon that he had fallen. T.S. told Gordon that he had tripped on his Halloween costume and hit his head on the toilet. He repeated this statement several times before his father picked him up from school. Because T.S. reported that he had tripped on his costume, Gordon had no notice of an alleged substance on the floor of the

5

subject bathroom and, therefore, did not inspect the bathroom floor or request that Sheridan do so. No one had reported water or any other substance on the floor of the subject bathroom at any point on October 31, 2017. If there had been any such report, Sheridan would have been dispatched to the subject bathroom immediately to place cones out and clean the floor. The incident report that Gordon filled out (attached to defendants' motion to dismiss) indicated that T.S. had slipped on his costume, fell, and hit his head on the toilet.

¶ 12    In plaintiff's response to defendants' motion to dismiss, plaintiff contended that the deposition testimony of Gordon, Sheridan, and T.S.'s aunt, Alberta Davis, showed that defendants' conduct with respect to the maintenance of the bathroom at issue was not subject to immunity under the Tort Immunity Act. Specifically, plaintiff argued that: (1) defendants had constructive knowledge of the condition of the floor in the subject bathroom on October 31, 2017, by way of their actual knowledge that the floor was "chronically wet" throughout the school's two-hour lunch periods as the result of the bathroom's heavy use during that time; (2) the inspection system in place on October 31, 2017, was not reasonably adequate in regard to the subject bathroom given the amount of use that bathroom received in a relatively short period of time each day, with plaintiff noting there was no scheduled inspections of the subject bathroom during that timeframe (despite Gordon and Sheridan being aware little boys frequently missed the toilet and urinate on the floor) even though Sheridan inspecting the subject bathroom a few times throughout the school's lunch periods would not have increased the cost of the school's operations or leave the lunchroom bereft of attendants; and (3) defendants did not have in place a reasonable inspection system on October 31, 2017, during the lunch and recess periods. Plaintiff argued that defendants' claim of immunity turned on fact questions for the jury to decide—

whether defendants had constructive notice of the alleged dangerous condition and whether there was a reasonable inspection system in place.

¶ 13    In reply, defendants argued that any awareness on their part of the potential for moisture to get on the floor of the subject bathroom in general did not equate to constructive notice of the specific moisture alleged by plaintiff in this case. Defendants noted that plaintiff failed to make any arguments related to the conspicuity of the alleged moisture on the floor, the length of time it was allegedly present, or that the condition alleged was so dangerous that defendants' inspection was not reasonably adequate. Defendants further noted that in his deposition, Sheridan indicated that he did not find any water or other substance on the bathroom floor when he inspected the subject bathroom about an hour after T.S.'s fall. Defendants contended that any moisture that was alleged to have been present was not a dangerous condition, a reasonably adequate inspection system was in place, and defendants met their duty of ordinary care to keep the premises in a reasonably safe condition. For all those reasons, defendants argued that they were entitled to immunity pursuant to section 3-102 of the Tort Immunity Act.

¶ 14                               C. Deposition Testimony[1]

¶ 15                               i. Deposition of Kimberly Gordon

¶ 16    In her deposition, Gordon testified that during the 2017-2018 school year, Thigpen Elementary was a kindergarten through fifth grade school with approximately 670 students (approximately half of the students were males). Sheridan was the engineer/custodian on staff

---

[1] In response to defendants' motion to dismiss, plaintiff referenced as "exhibits" the deposition transcripts of Gordon, Sheridan, and Davis (T.S.'s aunt), but it does not appear those deposition transcripts were filed with plaintiff's response in the trial court record. In reply, defendants referenced and attached as exhibits the discovery deposition transcripts of Gordon and Sheridan. On appeal, pursuant to Illinois Supreme Court Rule 329 (eff. July 1, 2017) (allowing for "material omissions" to the record on appeal to be corrected by stipulation of the parties), the parties stipulated to supplementing the record on appeal with the discovery deposition transcript of Davis.

7

during the day and, in addition, there were three nighttime custodians. Gordan was Sheridan's supervisor, and she knew that Sheridan inspected the school's 14 bathrooms at least three times per day. Each of the 14 bathrooms was mopped by one of the custodians at least once per day. The subject bathroom was assigned to Sheridan, who cleaned it every morning before school.

¶ 17 During the 2017-2018 school year, there were four lunch periods, with 150 to 175 students present during each lunch period. The lunch periods took place from 11:30 a.m. to 11:50 a.m. (kindergarten and half of first grade), 11:50 a.m. to 12:10 p.m. (second grade and the other half of first grade), 12:30 p.m. to 12:50 p.m. (fifth grade and half of fourth grade), and 12:50 p.m. to 1:10 p.m. (third grade, the other half of fourth grade, and special education classes). Prior to lunch, students used bathrooms located near their classrooms. The subject bathroom, which was located outside the cafeteria, was rarely in use because it was only used by the two special education classes (with a maximum of 13 students in each class). During the school's lunch periods, male students at recess or lunch were allowed to use the subject bathroom.

¶ 18 During lunch, Gordon supervised the cafeteria and Sheridan would typically also be in the lunchroom to take out garbage and clean up any spills. There were also two people that served lunch and another person who assisted in picking up garbage and supervising students. During lunch, only one student per each of the eight lunch tables was allowed to use the restroom at one time. They did so after being given permission to use the restroom and taking one of the eight restroom passes. In addition, two students from recess were allowed to use the subject restroom located outside the cafeteria at one time. If there was a spill in the subject bathroom located outside the cafeteria, students reported the spill to Gordon and she would, in turn, report the spill to Sheridan, either directly (if he was in the cafeteria with Gordon) or via radio walkie-talkies, and Sheridan would attend to the spill.

8

¶ 19    From 11:30 a.m. to 11:50 a.m., the subject bathroom was frequently used, although the available bathroom passes for the lunch and recess students were "rarely, if ever, all gone at the same time" and half of the passes were typically used by girls (who used the girls' bathroom rather than the subject boys' bathroom). According to Gordon, over the course of a 20-minute lunch period, maybe 10 or 15 kids would use bathroom passes (half being girls). Gordon acknowledged that little boys did not urinate directly into the toilet 100 % of the time. She also agreed that "anything is possible" in response to being questioned if it was possible that urine was on the floor at the time that T.S. fell.

¶ 20    According to Gordon, T.S.'s lunch period on October 31, 2017, was during the second lunch period from 11:50 a.m. to 12:10 p.m., with T.S.'s 20-minute recess period taking place beforehand (during the first lunch period). On that day, recess for all students was held in their classrooms because they were wearing costumes. For that reason, students were not given bathroom passes during recess for use of the subject bathroom on October 31, 2017. The recess students, instead, would have used the bathrooms closest to their classroom.

¶ 21    At some point after T.S. was dismissed from his classroom to the lunchroom (during the second lunch period), T.S. was given permission to use the subject bathroom. When T.S. entered the lunchroom from the bathroom, he reported to Gordon that he hit his head. Gordon took T.S. to the nurse. Gordon indicated to the nurse that T.S. had reported to her that T.S. had slipped on his costume. T.S. confirmed this statement as Gordon was relaying it to the nurse. Gordon filled out an accident report at approximately 12:05 p.m. and returned to the cafeteria to assist with the lunch dismissal. Gordon did not see a need to inspect the bathroom after T.S.'s fall because T.S. had reported tripping on his costume, his costume included pants that dragged on the floor, and T.S.'s explanation for the cause of his fall seamed reasonable.

9

¶ 22    Gordon also testified that she met with T.S.'s aunt the day after the incident and escorted her to view the subject bathroom. In the bathroom, there were drops of water on the floor near the sink, four to five feet from the door of the bathroom stall. Gordon indicated there were some drops of water "incidental just from kids washing hands that you would see in any bathroom at anytime." It seemed unlikely to Gordon that someone could slip on any such water drops by the sink and hit their head on a toilet. On October 31, 2017, no one had reported to Gordon that there was water on the floor of the subject bathroom, either before or after T.S. fell. If anyone had done so, Gordon would have reported it to Sheridan and asked him to clean it up. Gordon never ordered any cleanup of the floor of the subject bathroom on October 31, 2017, because there was no report of any substance on the floor that would require clean up. After Sheridan's inspection of the subject bathroom in the afternoon of October 31, 2017, Sheridan never indicated that he had identified any substance on the floor.

¶ 23    During Gordon's eight years at Thigpen Elementary, she did not recall any accidents involving a student slipping on water in a bathroom that resulted in an injury. In response to further questioning whether she could state for certain if there were any other slip and fall accidents, Gordon indicated, "I know there was no other slip and fall with an injury to this extent." She also indicated if there had been other slip and fall accidents there would be records of those incidents.

¶ 24    Gordon acknowledged that when children use the bathroom there could be some water that ended up on the floor, which was why, in part, Sheridan would routinely inspect the bathrooms. Gordon believed that the inspection system used by Sheridan for the bathrooms was sufficient and reasonable.

10

¶ 25    Approximately one week after T.S. fell in the subject bathroom, he returned to school with his mother and indicated that he was not sure whether he had slipped on his costume. When Gordon asked T.S. whether he had slipped on water or had slipped on his costume, T.S. indicated that he did not know.

¶ 26                        ii. Deposition of Tom Sheridan

¶ 27    At his deposition, Sheridan testified that he was the building engineer for Thigpen Elementary on October 31, 2017. As building engineer, Sheridan maintained the building, which included inspecting the bathrooms and doing plumbing repairs. Sheridan typically arrived at Thigpen Elementary at 5:00 a.m. to 6:00 a.m. each day and worked until about 3:45 p.m. On October 31, 2017, as per his custom and practice, Sheridan would have inspected the bathrooms two times prior to any of the lunch/recess periods (between 6:00 a.m. to 7:00 a.m. and again between 9:00 a.m. and 10:00 a.m.) and at least once more prior to leaving for the day.

¶ 28    When inspecting the bathrooms, Sheridan would check the urinals and toilets to make sure there was no debris or liquid on the floor. An inspection would take approximately three minutes for each bathroom. Sheridan looked for not only water on the floor but also for paper on the floor, leaks, and toilet clogs. If there was water or liquid on the floor, Sheridan would mop the bathroom. Sheridan acknowledged that it was possible for urine to be on the floor, which could create slippery floors. It was Sheridan's custom, routine, and practice to inspect the subject bathroom before and after all the lunch periods. During the students' lunch periods, Sheridan would be in the cafeteria to pick up and take out garbage, mop up spills on the floor, and sweep big items off the floor. He would check the bathrooms during the lunch periods if he was informed of a problem. He would also do a quick walk through of the subject bathroom near

11

cafeteria during lunch if he had the chance to do so, usually when the bathroom was not in use or only in use by one student.

¶ 29     According to Sheridan, on October 31, 2017, Gordon told Sheridan that T.S. had reported to her that he tripped or slipped on his costume, and she asked Sheridan to inspect the subject bathroom. When Sheridan checked the subject bathroom, there was nothing on the floor. Sheridan informed Gordon that there was no liquid or substances on the floor and that nothing was wet. At no point that day, or anytime within the week prior to that day, did Sheridan note any plumbing issues in the subject bathroom or water on the floor of the subject bathroom. At no time on October 31, 2017, did Sheridan receive any actual notice of any substance on the floor of the subject bathroom.

¶ 30     During Sheridan's 13 years of working at Thigpen Elementary, T.S. was the only child that had allegedly slipped on water in a bathroom. Sheridan believed that his custom and practice of inspecting the bathrooms at Thigpen Elementary at least three times per day was reasonable and adequate.

¶ 31                         iii. Discovery Deposition of Alberta Davis

¶ 32     Davis, T.S.'s aunt, testified that on the evening of October 31, 2017, T.S. told her that as soon as he had opened the bathroom door stall, he slipped and fell on water and hit his ear on the toilet. The next day, Davis went to Thigpen Elementary sometime after lunch (during school hours) and spoke with Gordon. Gordon informed Davis that T.S. had reported to her that he had slipped on his costume. Davis responded by indicating that T.S. had stated to her that he slipped on water that was in the bathroom. Gordon escorted Davis to view the subject bathroom, and Davis observed a sink with water on the floor and hand dryers with water on the floor. She also observed three urinals and three bathroom stalls. When she walked into the first stall, Davis

12

observed water on the floor. She indicated the water she observed by the urinals and by the toilet was not "puddles" but was enough water for someone to slip and fall. Davis brought the water on the floor to Gordon's attention, expressing concern that another child may get injured. Gordon stated to Davis that they could not check behind every student that used the restroom and indicated that they would check the bathrooms more often.

¶ 33 During her deposition, Davis indicated that she had recently looked at T.S.'s costume for the first time (a few days prior to her deposition; almost a year after the incident). Davis's sister had the costume in her possession since the date of the incident. When Davis looked at the costume on October 5, 2018, it came out of a clear plastic bag with a zipper on it. Davis did not know how long the costume had been in the bag. Davis indicated the costume appeared as if the left pant leg was more wrinkled than the right pant leg. Davis believed (based on her experience of doing laundry over the years) that the increased wrinkles on left leg of the costume was from getting wet in the water on the floor after T.S. slipped and fell on the day of the incident.

¶ 34                                    D. Hearing and Trial Court's Ruling

¶ 35 A hearing took place on defendants' motion to dismiss. Defendants' counsel argued that defendants were entitled to statutory immunity as a matter of law and the case should be dismissed with prejudice. Defendants' counsel contended that, as a matter of law, there had been no constructive notice of the alleged dangerous condition, there had been a reasonably adequate inspection system in place, and a reasonably adequate inspection system would not have discovered the condition alleged to be present in time for defendants to ameliorate it. Plaintiff's attorney argued that the inspection system in place was not reasonably adequate for the subject bathroom during the school's lunch periods and defendants had notice of the alleged dangerous condition because there were often "puddles." Plaintiff contended that a question of fact

13

remained as to whether defendants had notice and whether defendants' inspection system for the subject bathroom was sufficient. Defendants' counsel noted in reply that the evidence did not indicate that Sheridan was aware of a problem with puddles or with urine on the floor of the subject bathroom but, rather, Sheridan had merely acknowledged that sometimes when little boys use the bathroom their aim is not the best and it was a possibility that urine would end up on the floor.

¶ 36 The trial court stated:

"[M]y ruling is defendants are on leave pursuant to lack of actual or constructive notice under [section] 3-102(b)(1) or (b)(2). In particular with regard to the constructive notice, it goes to the reasonable care that the school district took or at least the absence of unreasonable car[e]. I'm going to grant the 2-619 motion."

¶ 37 The trial court granted defendants' section 2-619(a)(9) motion and dismissed plaintiff's complaint with prejudice. Plaintiff appealed.

II. ANALYSIS

¶ 38 On appeal, plaintiff argues that trial court erred by granting defendants' motion to dismiss brought pursuant to section 2-619(a)(9) of the Code. Plaintiff contends that "the sole issue considered by the trial court and at issue now on appeal, is whether [d]efendants had notice as required by section 3-102(a) [of the Tort Immunity Act]." Plaintiff argues the trial court erred by concluding, as a matter of law, that defendants did not have constructive notice of the alleged liquid substance on the floor of the subject bathroom where, according to plaintiff, the evidence showed defendant knew of the chronically wet and slippery condition in the subject bathroom and that students had slipped in the past but failed to take any remedial action to avoid injuries.

14

Plaintiff also contends that defendants' inspection system of the subject boys' bathroom was not reasonably adequate and that defendants did not have in place a reasonable inspection system that would have discovered water on the floor of the subject bathroom. Defendants argue that the trial court correctly found they were immune from liability under section 3-102 of the Tort Immunity Act where defendants had neither actual nor constructive notice of the alleged liquid substance on the floor of the boys' bathroom and defendants operated an inspection system of the subject bathroom with due care.

¶ 39    "The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation." *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). In determining whether to grant a section 2-619 motion to dismiss, a trial court " 'must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party.' " *Valerio v. Moore Landscapes, LLC*, 2021 IL 126139, ¶ 20 (quoting *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189 (1997)). The trial court accepts all well-pleaded facts in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Id*. We review a trial court's ruling on a section 2-619 motion to dismiss *de novo*. *Id.*

¶ 40    Section 2-619(a)(9) of the Code permits an involuntary dismissal where "the claim asserted against [the] defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2016). The moving party admits the legal sufficiency of the complaint but asserts that some affirmative defense or other matter defeats the claim. *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 28 (2019); *Van Meter*, 207 Ill. 2d at 367. An "affirmative matter" is a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact alleged within, or inferred from, the complaint. *Valerio*, 2021 IL 126139, ¶ 19. An affirmative matter for the purpose of a section

15

2-619(a)(9) motion cannot merely refute well plead facts but, instead, must assert a completely new matter that is not present in the complaint. *Gaja v. Steel Solutions Firm, Inc.*, 2015 IL App (1st) 142219, ¶ 30 (citing *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 121 (2008)). An affirmative matter must assert something more than evidence that defendant expects to provide to refute an ultimate fact. *Id.*

¶ 41      An assertion of immunity pursuant to the Tort Immunity Act is an affirmative matter that is properly raised in a section 2-619(a)(9) motion to dismiss. *Smith*, 231 Ill. 2d at 121; *Van Meter*, 207 Ill. 2d at 367. The purpose of the Tort Immunity Act in granting certain immunities and defenses is to protect local public entities and their employees from liability arising from the operation of government. 745 ILCS 10/1-101.1 (West 2016); *Monson v. City of Danville*, 2018 IL 122486, ¶ 15. The Tort Immunity Act does not create new duties but, rather, codifies those duties existing at common law for which the subsequently delineated immunities are applicable. *Van Meter*, 207 Ill. 2d at 368.

¶ 42      Section 3-102 of the Tort Immunity Act provides:

> " (a) Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and *shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition* that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition.

16

(b) *A public entity does not have constructive notice of a condition of its property that is not reasonably safe within the meaning of Section 3-102(a) if it establishes either:*

(1) The existence of the condition and its character of not being reasonably safe would not have been discovered by an inspection system that was reasonably adequate considering the practicability and cost of inspection weighed against the likelihood and magnitude of the potential danger to which failure to inspect would give rise to inform the public entity whether the property was safe for the use or uses for which the public entity used or intended others to use the public property and for uses that the public entity actually knew others were making of the public property or adjacent property; or

(2) The public entity maintained and operated such an inspection system with due care and did not discover the condition. (Emphasis added.) 745 ILCS 10/3-102 (West 2016).

¶ 43                        A. Section 3-102(a) of the Tort Immunity Act

¶ 44         In their section 2-619(a)(9) motion to dismiss, defendants claimed immunity from liability, in part, pursuant to section 3-102(a) of the Tort Immunity Act, contending they did not have actual or constructive notice of the alleged liquid substance and supporting this contention with affidavits and deposition transcripts. However, contrary to defendants' contentions, section 3-102(a) does not grant immunities. See *Monson*, 2018 IL 122486, ¶¶ 21, 24.

¶ 45         Section 3-102(a) of the Tort Immunity Act codified the common law duty of a local public entity to maintain its property in a reasonably safe condition. See 745 ILCS 10/3-102(a)

17

(West 2016); *Torres v. Peoria Park District*, 2020 IL App (3d) 190248, ¶ 19. The first clause of section 3-102(a) sets forth the general duty of a local public entity to maintain its property in a reasonably safe condition under certain circumstances. *Monson*, 2018 IL 122486, ¶ 21. The second clause of section 3-102(a) "clearly refers to the *plaintiff's* burden to prove the defendant had actual or constructive notice of the dangerous condition of the property within a reasonable amount of time to remedy or protect against the condition." (Emphasis in original.) *Id.* ¶ 23. The plaintiff has the burden to allege and prove all elements of a negligence claim, and under section 3-102(a) actual or constructive notice of a dangerous condition is an element of a negligence claim. *Id.* ¶¶ 21, 23-25 ("the statutory language does not support [a] characterization of section 3-102(a) as an immunity provision"). In contrast, the immunities under the Tort Immunity Act are affirmative defenses that are a defendant's burden to plead and prove. *Id.* ¶ 23 ("if the purpose of section 3-102(a) were to grant immunity to a local public entity *** the statute would refer to the burden of proof imposed on the defendant, not the plaintiff").

¶ 46    Here, defendants' contention of their lack of actual or constructive notice under section 3-102(a) did not raise an "affirmative matter." In fact, for the purpose of their section 2-619(a)(9) motion, the legal sufficiency of plaintiff's action was admitted by defendants, including the sufficiency of plaintiff's allegations regarding defendant's notice of the alleged liquid substance on the floor of the subject bathroom. See *id.* ¶¶ 23-25; *Smith*, 231 Ill. 2d at 121 ("a defendant moving for dismissal under section 2-619(a)(9) otherwise admits the legal sufficiency of plaintiff's cause of action").

¶ 47    Additionally, insofar as defendants attempted to introduce contrary evidence for the purpose of showing their lack of notice under section 3-102(a), section 2-619(a)(9) is not the proper vehicle to contest factual allegations. *Reynolds v. Jimmy John's Enterprises, LLC*, 2013

18

IL App (4th) 120139, ¶ 42. Instead, defendants' argument regarding their lack of notice of the alleged liquid substance for purposes of section 3-102(a) would be more appropriately addressed in a motion for summary judgment. See 735 ILCS 5/2-1005 (West 2020) (summary judgment); *Reynolds*, 2013 IL App (4th) 120139, ¶ 53 ("[w]here the defendant uses material to support its version of the facts, point out the factual deficiencies in plaintiff's case, or allege plaintiff cannot prove his case, it is apparent the defendant is merely challenging the truthfulness of the plaintiff's factual allegations and a fact-based motion such as a section 2-1005 motion should be used"). "A section 2-619(a)(9) motion is not a substitute for a summary judgment motion." *Reynolds*, 2013 IL App (4th) 120139, ¶ 53.

¶ 48                        B. Section 3-102(b) of the Tort Immunity Act

¶ 49        In their section 2-619(a)(9) motion, defendants also asserted the affirmative matter of immunity pursuant to section 3-102(b)(1) and (b)(2) of the Tort Immunity Act. Pursuant to section 3-102(b)(1), defendants argued that their inspection system was reasonably adequate and that increasing the frequency of inspecting all the bathrooms in the school "would be only slightly more likely than the current system to identify the presence of water on the floor and would be excessively costly and unreasonable given the nature of the defect." See 745 ILCS 10/3-102(b)(1) (West 2016). Defendants further argued the presence of water on the bathroom floor presented a minimal danger where children were not anticipated to be running in the bathroom and the very nature of a bathroom made it unreasonable to expect that a bathroom would always be free of any amount of water. Defendants also argued that they were immune from liability pursuant to section 3-102(b)(2) because they maintained a reasonably adequate inspection system with due care and had not discovered the alleged condition. See 745 ILCS 10/3-102(b)(2) (West 2016). Defendants attached the affidavits of Gordon and Sheridan to their

19

motion to dismiss and the deposition transcripts of Gordon and Sheridan to their reply to plaintiff's response to their motion. In plaintiff's response to defendants' motion to dismiss, with reference to the deposition transcripts of Gordon, Sheridan, and Davis,[2] plaintiff contended, among other things, that the deposition testimony of Gordon, Sheridan, and Davis showed that the inspection system in place on October 31, 2017, was not reasonably adequate.

¶ 50    Once a defendant satisfies the initial burden of going forward on a section 2-619(a)(9) motion to dismiss, the burden shifts to the plaintiff to establish that the defense is unfounded or that the defense would require the resolution of an essential element of material fact before it is proven. *Van Meter*, 207 Ill. 2d at 377. If the trial court finds the plaintiff failed to carry the shifted burden of going forward, the motion to dismiss may be granted and the cause dismissed. *Id*. In reviewing the trial court's decision, a court of review must determine if there was a genuine issue of material fact to preclude the dismissal or, absent such an issue of material fact, whether a dismissal was proper as a matter of law. *Id*. at 377-78.

¶ 51    In granting defendants' section 2-619(a)(9) motion, the record shows that the trial court's ruling was based upon its finding that defendants were immune from liability pursuant to section "3-102(b)(1) or (b)(2)" in relation to defendants acting with reasonable care, presumably in relation to operating a reasonably adequate inspection system. Generally, unless it is established that a public entity received either actual or constructive notice pursuant to section 3-102(a) of the Tort Immunity Act (745 ILCS 10/3-102(a) (West 2016)), a court need not address the issue

---

[2] In response to defendants' motion to dismiss, plaintiff referenced as "exhibits" the deposition transcripts of Gordon, Sheridan, and Davis (T.S.'s aunt), but it does not appear those deposition transcripts were filed with plaintiff's response in the trial court record. In reply, defendants referenced and attached as exhibits the discovery deposition transcripts of Gordon and Sheridan. On appeal, pursuant to Illinois Supreme Court Rule 329 (eff. July 1, 2017) (allowing for "material omissions" to the record on appeal to be corrected by stipulation of the parties), the parties stipulated to supplementing the record on appeal with the discovery deposition transcript of Davis.

of whether the public entity established the reasonableness of its inspection system pursuant to section 3-102(b) of the Tort Immunity Act. *Pinto v. DeMunnick*, 168 Ill. App. 3d 771, 582-83 (1988). However, as discussed above, by invoking immunity pursuant to section 3-102(b) of the Tort Immunity Act by way of a section 2-619(a)(9) motion, defendants have admitted the legal sufficiency of plaintiff's complaint. See *Van Meter*, 207 Ill. 2d at 367 (the moving party of a section 2-619(a)(9) motion to dismiss admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter to defeat the claim); see also *Valerio*, 2021 IL 126139, ¶ 20 (in determining whether to grant a section 2-619 motion to dismiss, a trial court shall interpret the pleadings and supporting documents in the light most favorable to plaintiff, accept all well-pleaded facts as true, and draw all reasonable inferences in favor of the plaintiff).

¶ 52    As to the issue of tort immunity, defendants were required to establish that the alleged condition and its character of not being reasonably safe would not have been discovered by a reasonably adequate inspection system (considering the practicability and cost of inspection weighed against the likelihood and magnitude of the potential danger to which failure to inspect would give rise) or that defendants maintained and operated such an inspection system with due care and did not discover the condition. See 745 ILCS 10/3-102(b)(1), (b)(2) (West 2016). Defendants essentially argued that the alleged condition was not discovered despite defendants maintaining and operating a reasonably adequate inspection system. The trial judge found in favor of defendants in that regard, referencing subsections "3-102(b)(1) or (b)(2)" of the Tort Immunity Act.

¶ 53    Plaintiff argues that defendants had failed to meet their burden of showing they were entitled to immunity. Plaintiff, in essence, contends that defendants' failure to regularly inspect the subject bathroom during times of heavy use by young boys in kindergarten, first grade, and

21

second grade (during the first and second lunch periods prior to T.S.'s fall) indicates that defendants did not have a reasonably adequate inspection system within the meaning of section 3-102(b). See 745 ILCS 10/3-102(b) (West 2016). "What was reasonable inspection was a question of fact for the jury." *Baker v. Granite City*, 311 Ill. App. 586, 593 (1941); see also *Brooks v. Essex Crane Rental Corp.*, 233 Ill. App. 3d 736, 742 (1992) ("the question of what would be revealed by a reasonable inspection is an issue for a trier of fact").

¶ 54        Under section 2-619(c) of the Code, a trial judge may weigh evidence and resolve factual disputes except where, as in this case, the non-moving party has filed a jury demand. *Turner v. 1212 S. Michigan Partnership*, 355 Ill. App. 3d 885, 894 (2005). Subsection (c) of section 2-619 of the Code provides:

> "If, upon the hearing of the motion, the opposite party presents affidavits or other proof denying the facts alleged or establishing facts obviating the grounds of defect, the court may hear and determine the same and may grant or deny the motion. If a material and genuine disputed question of fact is raised the court may decide the motion upon the affidavits and evidence offered by the parties, or may deny the motion without prejudice to the right to raise the subject matter of the motion by answer and *shall so deny it if the action is one in which a party is entitled to a trial by jury and a jury demand has been filed by the opposite party in apt time.*" (Emphasis added.) 735 ILCS 5/2-619(c) (West 2016).

¶ 55        In this case, the trial court erred by failing to deny defendants' section 2-619(a)(9) motion to dismiss where there was "a material and genuine disputed question of fact" as to whether defendants' inspection system was reasonably adequate. See *id.* We, therefore, reverse and remand this matter to the trial court for further proceedings.

22

¶ 56                                    III. CONCLUSION

¶ 57          The judgment of the circuit court of Will County is reversed and this cause remanded.

¶ 58          Reversed and remanded.

¶ 59          JUSTICE SCHMIDT, dissenting:

¶ 60          I would affirm. What boys' bathroom does not have liquid on the floor from time to time? Either water or urine. The defendants cannot reasonably be expected to have a janitor stationed in the boys' bathroom all day long to mop up after every kid who uses the bathroom. Common sense dictates that this case is going nowhere. Apparently, the plaintiff prefers that his case dies a death of 1000 cuts.